# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Bremen Community High School District No. 228 v. Cook County Comm'n on Human Rights, 2012 IL App (1st) 112177**

---

| | |
|---|---|
| Appellate Court Caption | BREMAN COMMUNITY HIGH SCHOOL DISTRICT No. 228, THE BOARD OF EDUCATION OF BREMEN COMMUNITY HIGH SCHOOL DISTRICT No. 228 and EVELYN GLEASON, Plaintiffs-Appellants, v. THE COOK COUNTY COMMISSION ON HUMAN RIGHTS and RICHARD MITCHELL, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-2177 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | September 27, 2012<br><br>November 5, 2012<br>November 8, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant county human rights commission had jurisdiction to consider the complaint filed by the individual defendant with the commission alleging that his termination from his position as superintendent of plaintiff school district because of his sexual orientation violated the county human rights ordinance; therefore, the school district's action seeking a writ of *mandamus* directing the commission to dismiss defendant's complaint, an order prohibiting the commission from exercising jurisdiction over plaintiffs, and an injunction against further action on defendant's complaint was properly dismissed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-44392; the Hon. Nancy J. Arnold, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Clausen Miller, PC, of Chicago (Edward M. Kay, Don R. Sampen, and Christopher R. Henson, of counsel), for appellants. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Kent S. Ray, and Sisavanh B. Baker, Assistant State's Attorneys, of counsel), for appellees. |
| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion. |
| | Presiding Justice Lavin and Justice Sterba concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiffs Bremen Community High School District No. 228, Board of Education of Bremen Community High School District No. 228, and Evelyn Gleason (collectively, the plaintiffs) appeal from an order of the circuit court dismissing with prejudice their complaint against defendants Cook County Commission on Human Rights and Richard Mitchell. We affirm.

¶ 2                              I. BACKGROUND

¶ 3    The plaintiffs consist of the Board of Education of Bremen Community High School District No. 228 (Board), which serves as the governing authority for the Bremen Community High School District No. 228; Evelyn Gleason, who is the presiding officer of the Board; and the Bremen Community High School District No. 228 (school district). The defendants are the Cook County Commission on Human Rights (the Commission) and Richard Mitchell (Dr. Mitchell).[1] The Commission is an administrative agency created by the County of Cook through its home rule powers under section 6(a) of article VII of the 1970 State of Illinois Constitution to investigate and determine incidents of human rights violations within Cook County.

¶ 4    In March 2004, defendant Dr. Mitchell entered into an employment contract with the Board to serve as superintendent of Bremen Community High School District No. 228. He was terminated in 2006 following a disciplinary action.

---

[1]Although named as a defendant-appellee herein, Dr. Mitchell did not file his appearance with the trial court below and did not respond to the motion to dismiss at issue here.

¶ 5     In December 2006, Dr. Mitchell filed a complaint with the Commission claiming plaintiffs violated the Cook County Human Rights Ordinance (the Ordinance) (Cook County Ordinance No. 02-O-35 *et seq.* (amended Nov. 19, 2002)) by terminating his employment as superintendent of the Bremen school district because of his sexual orientation.

¶ 6     The school district, the Board, and Gleason filed a motion to dismiss the complaint in January 2007. Through this motion, they argued that the Commission lacked subject matter jurisdiction to investigate or adjudicate the complaint because it would exceed the scope of home rule powers granted to Cook County by article VII, section 6(a), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6). They argued that the Commission lacked jurisdiction over school districts and officials. Dr. Mitchell then filed a response to the motion to dismiss, arguing that the Commission had previously ruled on this issue and determined that it does have jurisdiction. The Commission denied the motion to dismiss. In July 2010, the Commission issued an investigation report finding substantial evidence that plaintiffs violated the Ordinance by terminating Dr. Mitchell due to his sexual orientation. The case before the Commission, filed in 2006, remains pending.

¶ 7     The plaintiffs then brought the same jurisdictional challenge before the trial court against Dr. Mitchell and the Commission in a three-count complaint seeking *mandamus*, prohibition, and a preliminary injunction. Specifically, plaintiffs sought: (1) a *mandamus* order directing the Commission to dismiss Dr. Mitchell's complaint for lack of jurisdiction; (2) the issuance of a final order prohibiting the Commission from exercising jurisdiction over plaintiffs as it relates to Dr. Mitchell's complaint; and (3) a preliminary injunction enjoining the Commission from engaging in or conducting any activity in furtherance of Dr. Mitchell's complaint pending a final decision on the merits of the complaint.

¶ 8     In December 2010, the Commission filed a motion to dismiss this complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)). The motion was fully briefed by the parties. This is the motion to dismiss at issue here. On May 17, 2011, following arguments by the parties, the trial court dismissed the complaint with prejudice, finding, in a written order:

> "This matter coming on to be heard upon the Commission's motion to dismiss, the matter fully brief[ed] and argued and the court fully advised in the premises;
>
> IT IS HEREBY ORDERED:
>
> 1) The Commission's motion is granted and the case is dismissed in its entirety with prejudice–the court finding that Plaintiff has no clear right to mandamus and that the Plaintiff made no showing that the Commission acted outside its home-rule powers, as fully stated in open court;
>
> 2) Plaintiffs' oral motion for leave to amend is denied."

In June 2011, plaintiffs filed a motion to amend and attached a copy of their proposed amended complaint. Thereafter, plaintiffs also filed a motion for rehearing of the May 17 order which dismissed the complaint with prejudice and denied plaintiff's oral motion for leave to file an amended complaint. In July 2010, the court denied the motion for reconsideration and gave the Commission leave to file a response to the motion to amend. Then, following oral arguments by the parties, the trial court denied the motion to amend.

¶ 9 Plaintiffs now appeal from: (1) the trial court's dismissal pursuant to section 2-615 following a determination that the Commission had jurisdiction and that plaintiffs failed to show a clear right upon which the trial court may grant the extraordinary relief of *mandamus*; and (2) the trial court's denial of their motion to amend the complaint.

¶ 10                                    II. ANALYSIS

¶ 11 Plaintiffs contend that the trial court erred when it denied their motion to dismiss pursuant to section 2-615 of the Code. Plaintiffs argue that the Commission lacked subject matter jurisdiction and, therefore, their complaint for a writ of *mandamus* was appropriate. We disagree.

¶ 12 "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts," and we "construe the allegations in the complaint in the light most favorable to the plaintiff." *Marshall*, 222 Ill. 2d at 429. "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall*, 222 Ill. 2d at 429; *Canel v. Topinka*, 212 Ill. 2d 311, 318 (2004). We review an order granting or denying a section 2-615 motion *de novo*. *Marshall*, 222 Ill. 2d at 429.

¶ 13 First, plaintiffs contend that the trial court erred in denying *mandamus* relief. They argue that *mandamus* was the appropriate relief here because plaintiffs had no other remedy for the Commission's "improper" exercise of jurisdiction, as well as because of the "continuing nature of the Commission's burdensome and wrongful conduct." In addition, plaintiffs argue that *mandamus* is appropriate here because the present case presents matters of great importance to the administration of justice. We disagree.

¶ 14 *Mandamus* is an extraordinary remedy traditionally used to compel a public official to perform a purely ministerial duty. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 192-93 (2009); *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 555 (2002). *Mandamus* provides affirmative rather than prohibitory relief and can be used to compel the undoing of an act. *People ex rel. Waller v. McKoski*, 195 Ill. 2d 393, 398 (2001). *Mandamus* will be granted only if a plaintiff can establish: (1) a clear, affirmative right to relief; (2) a clear duty of the public officer to act; and (3) clear authority in the public officer to comply. *People ex rel. Waller*, 195 Ill. 2d at 400-01; *1350 Lake Shore Associates v. Hill*, 326 Ill. App. 3d 788, 794 (2001) ("The issuance of a writ of *mandamus* is appropriate only where the plaintiff shows a clear, affirmative right to the requested relief, a clear duty to act on the defendant's part, and clear authority in the defendant to comply with the writ."). *Mandamus* is not a substitute for appeal. *People ex rel. Waller*, 195 Ill. 2d at 398. " 'It is not the office of the writ of *mandamus* *** to correct, direct, or control the action of a judge in any matter which he has jurisdiction to decide. For mere error, however gross or manifest, the remedy is an appeal or writ of error, and the writ of *mandamus* will not lie for its correction if the court has jurisdiction of the subject matter and the parties.' " *People ex rel. Atchison, Topeka & Santa*

*Fe Ry. Co. v. Clark*, 12 Ill. 2d 515, 520 (1957) (quoting *People ex rel. Barrett v. Shurtleff*, 353 Ill. 248, 259 (1933)).

¶ 15 "*Mandamus* is an appropriate remedy to correct an order entered by a court that erroneously assumed jurisdiction which the court did not possess (*People ex rel. Bradley v. McAuliffe*, 24 Ill. 2d 75, 78 (1962) (collecting cases)) or to expunge a void order entered by a tribunal without jurisdiction (*Daley v. Laurie*, 106 Ill. 2d 33, 40 (1985); *People ex rel. Carey v. White*, 65 Ill. 2d 193, 197 (1976); *People ex rel. Courtney v. Prystalski*, 358 Ill. 198, 201-02 (1934)). A writ of *mandamus* will be awarded only if the petitioner establishes a clear right to the relief requested, a clear duty of the public official to act, and clear authority in the public official to comply with the writ." *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 38-39 (2011). "The petitioner in a *mandamus* action has the burden of establishing every material fact necessary to show the plain duty of the respondent before a court will interfere." *Machinis v. Board of Election Commissioners*, 164 Ill. App. 3d 763, 767 (1987) (citing *People ex rel. Council 19 of the American Federation of State, County & Municipal Employees v. Egan*, 52 Ill. App. 3d 1042, 1045 (1977)).

¶ 16 "A petitioner seeking a writ of *mandamus* to command an officer to perform a duty must show a clear right to the relief asked by allegation of specific facts. (*People ex rel. Thomas v. Board of Education of City of Chicago*, 40 Ill. App. 2d 308, 188 N.E.2d 237 [(1963)].) Petitioner must also show a duty on the part of the respondent by allegations of material facts; mere conclusions will not suffice. *People ex rel. McGrady v. Carmody*, 104 Ill. App. 2d 137, 243 N.E.2d 19 [(1968)]." *People ex rel. Vlahakis v. Hanrahan*, 8 Ill. App. 3d 313, 314 (1972).

¶ 17 Here, the trial court dismissed the motion with prejudice, finding that plaintiffs had no clear right to *mandamus* and that the plaintiffs failed to show the Commission acted outside of its *homerule powers. In open court, it stated:*

> "THE COURT: I'm going to grant the motion to dismiss because the Complaint for mandamus here and prohibition, and the third count seeking [injunction] does not set out a clear right as to which the Court should direct the Human Rights Commission of Cook County to dismiss the proceeding now pending before it."

The court continued:

> "THE COURT: [Mandamus] clearly is not the proper vehicle here. As the Court said in *Daley v. Laurie*, mandamus is not the proper vehicle. It is an extraordinary writ not to be used as a substitute for the ordinary channels of appeal. In effect here, the plaintiff is seeking *de novo* and immediate appeal of an interlocutory order, denial of a motion to dismiss. In reality, the plaintiff is only seeking review of the Human Rights Commission's order interpreting it's [*sic*] only ordinance as to whether a school district is excluded from the definition of an employer in that ordinance. The plaintiff here is contending that is error. That is not enough to establish the clear right upon which the court should base the extraordinary writ of mandamus."

¶ 18 We find no error in the granting of the motion to dismiss where the plaintiffs failed to show they had a clear right on which the court should act. See *People ex rel. Vlahakis*, 8 Ill. App. 3d at 314 ("A petitioner seeking a writ of *mandamus* to command an officer to perform

-5-

a duty must show a clear right to the relief asked by allegation of specific facts. (*People ex rel. Thomas v. Board of Education of City of Chicago*, 40 Ill. App. 2d 308, 188 N.E.2d 237.) Petitioner must also show a duty on the part of the respondent by allegations of material facts; mere conclusions will not suffice. *People ex rel. McGrady v. Carmody*, 104 Ill. App. 2d 137, 243 N.E.2d 19."). In their complaint, the plaintiffs alleged that: the Commission operates pursuant to the exclusive authority of the Ordinance, which was enacted pursuant to Cook County's home rule powers; and the school district is a quasi-municipal corporation possessing "the same degree of power as municipal corporations although it lacks the political and legislative authority." They alleged that the Commission lacks the authority to investigate, regulate, or impose penalties against the school district, its board and officers because:

> "(a) The State of Illinois exercises plenary power over the Illinois school system, including the School District, Board and officers, and thus has preempted the use of home rule powers in this area.
>
> (b) The Ordinance, as applied to plaintiffs herein, does not pertain to, and is beyond, the government and affairs of Cook County since the School District itself, and the State of Illinois, have a more vital and direct interest in Dr. Mitchell's contract than Cook County.
>
> (c) Nothing about the relationship between Cook County and the School District under the Illinois Constitution or statutes permits Cook County to exercise authority over a sister governmental unit.
>
> (d) The Commission's purported exercise of jurisdiction with respect to Dr. Mitchell's claim is inconsistent with the letter and spirit of Illinois law in that the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, which is the state legislation comparable to the Ordinance, expressly excludes 'principal administrative officers' of any governmental unit from the definition of 'employee' entitled to recovery under such Act. See 775 ILCS 5/2-101(d). The Act thus would not permit recovery by Dr. Mitchell as a former school superintendent for the claims he has asserted against the plaintiffs herein, and any relief accorded by the Commission, and its very exercise of jurisdiction over a claim by a non-employee, would be and is contrary to the Act."

Plaintiffs argue that, for the foregoing reasons, they "have a clear legal right to have the Complaint currently pending before the Commission to be dismissed for lack of jurisdiction," and that the Commission has the "clear legal duty to dismiss the Complaint."

¶ 19    Plaintiffs have failed to show the requisite clear right. Essentially, plaintiffs seek review of the Commission's order interpreting the Ordinance regarding whether a school district is excluded from the definition of "employer" in the Ordinance. Plaintiffs seek an order directing the Cook County Commission to dismiss Dr. Mitchell's complaint for lack of jurisdiction. *Mandamus* is not the proper vehicle for that claim, as the Commission has jurisdiction over plaintiffs pursuant to its home rule powers.

¶ 20    In their complaint, plaintiffs alleged the Commission exceeded Cook County's home rule authority under the Illinois Constitution in asserting jurisdiction over plaintiffs as it relates to Dr. Mitchell's complaint. They cited four specific reasons: (1) the Ordinance, as applied

to plaintiffs, is beyond the government and affairs of Cook County because the school district and the State of Illinois have a more vital and direct interest in Dr. Mitchell's contract than does Cook County; (2) the state preempted Cook County's home rule powers; (3) neither the Illinois Constitution nor any statute permits the Commission to exercise authority over a "sister governmental unit"; and (4) the Commission's exercise of jurisdiction over plaintiffs is inconsistent with the letter and spirit of the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2010)).

¶ 21          A. Plaintiffs Are Not Excluded From the Definition
                    of "Employer" Found in the Ordinance

¶ 22     At the outset, we will address plaintiffs' preliminary matters. First, plaintiffs contend that they do not fit the definition of employer as provided in section 42-31 of the Ordinance, which excludes the State of Illinois and municipalities, and, therefore, they are not subject to the Ordinance. In support of this argument, plaintiffs point out that the Ordinance expressly excludes state agencies and municipalities from the operation of the Ordinance through the definition of "employer." They argue that they qualify as both agents of the state and a municipality and that, therefore, they do not qualify as "employers." Accordingly, they argue, the Ordinance does not apply to them. We disagree.

¶ 23     The exclusion in the Ordinance with which plaintiffs are concerned is found in the "definitions" section of the Ordinance, and states as follows:

      "*Employer* means:

      (1) Any person employing one or more employees, or seeking to employ one or more employees

            a. If the person has its principal place of business within Cook County; or

            b. Does business within Cook County.

      (2) The term 'employer' does not mean:

            a. The government of the United States or a corporation wholly owned by the government of the United States;

            b. An Indian tribe or a corporation wholly owned by an Indian tribe;

            c. The government of the State or any agency or department thereof; or

            d. The government of any municipality in Cook County." (Emphasis in original.)
      Cook County Ordinance No. 02-O-35, § 42-31 (amended Nov. 19, 2002).

¶ 24     Plaintiffs selectively excerpt a quote from *Board of Education of Bremen High School District No. 228 v. Mitchell*, 387 Ill. App. 3d 117, 120 (2008), to argue that plaintiffs are agencies of the State. Quoting *Board of Education*, they argue, "[in *Board of Education*,] [t]his Court stated that a school district 'is a quasi-municipal corporation created by the state to act as its administrative arm in implementing the establishment of free schools.' " They continue that, because the board is an administrative arm of the state, it is, therefore, an agency of the state. A full reading of that case, however, shows that this court did not consider the board of education an agency of the state. Rather, in *Board of Education*, which

involves the same defendants as but different issues than the case at bar, this court stated:

> "A school district is a quasi-municipal corporation created by the state to act as its administrative arm in implementing the establishment of free schools. *Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210*, 231 Ill. 2d 184, 203 (2008). A quasi-municipal corporation possesses the same degree of power as a municipal corporation but lacks the same scope of political and legislative authority. *People v. Deatherage*, 401 Ill. 25, 44, 81 N.E.2d 581, 592 (1948); *People ex rel. Leland v. Board of Education of City of Chicago*, 325 Ill. 320, 322, 156 N.E. 305 (1927)." *Board of Education of Bremen High School District No. 228*, 387 Ill. App. 3d at 120.

¶ 25 The *Board of Education* court also determined that a board of education qualifies as an employing unit for purposes of unemployment insurance. *Board of Education of Bremen High School District No. 228*, 387 Ill. App. 3d at 121, 123. It also stated "[o]ur supreme court has explained that a school district is 'the territory included within its corporate boundaries,' whereas a board of education 'furnishes the method and machinery for the government and management of the district.' " *Board of Education of Bremen High School District No. 228*, 387 Ill. App. 3d at 120-21 (citing *Board of Education of District No. 88 v. Home Real Estate Improvement Corp.*, 378 Ill. 298, 303 (1941)). Plaintiffs are not considered agencies of the State or municipalities under the Ordinance.

¶ 26 Moreover, our constitution treats school districts as separate entities from municipalities. For instance, article VII, section 1, provides:

> " 'Municipalities' means cities, villages and incorporated towns. 'Units of local government' means counties, municipalities, townships, special districts, and units, designated as units of local government by law, which exercise limited governmental powers or powers in respect to limited governmental subjects, *but does not include school districts*." (Emphasis added.) Ill. Const. 1970, art. VII, § 1.

¶ 27 Nor are plaintiffs considered municipalities under the Illinois Municipal Code, which defines municipalities as:

> "a city, village, or incorporated town in the State of Illinois, but, unless the context otherwise provides, 'municipal' or 'municipality' *does not include* a township, town when used as the equivalent of a township, incorporated town that has superseded a civil township, county, *school district*, park district, sanitary district, or any other similar governmental district." (Emphases added.) 65 ILCS 5/1-1-2(1) (West 2010).

¶ 28 That an entity is a quasi-municipal organization acting as the administrative arm of the state does not make it a municipal organization or a state agency for purposes of the Ordinance. We conclude that, for the specific purposes of section 42-31 of the Ordinance, the plaintiffs are not agencies of the state, nor are they considered a municipality of the state. Plaintiffs, as "employers," are not excluded, therefore, by the terms of the Ordinance.

¶ 29                                      B. Plenary Power

¶ 30 Plaintiffs also contend that article X, section 1, of the Illinois Constitution vests the state

-8-

legislature with plenary jurisdiction over school districts and, thus, the county, as a home rule unit, may not impose burdens on plaintiffs in the absence of express authority. We disagree. Article X, section 1, of the Illinois Constitution provides:

"A fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities.

The State shall provide for an efficient system of high quality public educational institutions and services. Education in public schools through the secondary level shall be free. There may be such other free education as the General Assembly provides by law.

The State has the primary responsibility for financing the system of public education." Ill. Const. 1970, art. X, § 1.

¶ 31 "The state has 'plenary' power over state-operated educational institutions, and any attempt by a home rule municipality to impose burdens on those institutions, in the absence of state approval, is unauthorized." *City of Chicago v. Board of Trustees of the University of Illinois*, 293 Ill. App. 3d 897, 904 (1997). The plaintiffs argue that the "Ordinance involved in the case at bar does nothing more than to impose a regulatory and financial burden on the plaintiffs" and, therefore, constitutes an unauthorized regulation of the school district in contravention of article X, section 1. We disagree.

¶ 32 We find *Rajterowski v. City of Sycamore*, 405 Ill. App. 3d 1086 (2010), to be instructive. In that case, the plaintiff homeowners protested the City of Sycamore's real estate transfer tax, the proceeds of which benefitted the school district. *Id.* at 1089-90. The plaintiffs contended, in relevant part, that the city, a home rule municipality, was circumventing the School Code and exceeding its constitutional powers by raising money for the school district through the real estate transfer tax without following the provisions of the Illinois School Code. *Id.* at 1116.

¶ 33 The *Rajterowski* court examined article X, section 1, and clarified that the plenary power in article X "provides that the State has primary responsibility for financing public education." (Emphasis omitted.) *Id.* at 1115-16. The court found the plaintiffs failed to enumerate a provision in the School Code that specifically restricts a municipality's powers to forward money to the school district. *Id.* Thus, the court held the city did not exceed its authority by circumventing the School Code "[b]ecause a home rule unit may exercise concurrently with the State any power of a home rule unit, in the absence of any specific legislative limitation on home rule units' powers, or the State's exclusive exercise of power, over schools[.]" *Id.*, at 1116.

¶ 34 Similarly, in the case at bar, plaintiffs have pointed to nothing in article X or the School Code that specifically restricts the Commission's exercise of jurisdiction over plaintiffs where the county, as a home rule unit, exercises concurrent jurisdiction with the State. See 775 ILCS 5/7-108(B) (West 2010) (the Illinois Human Rights Act specifically provides concurrent jurisdiction between the state and other local governmental entities). In fact, rather than imposing "burdens" on the plaintiffs, the county relieves their burden by addressing human rights claims that would otherwise be brought elsewhere.

¶ 35 Plaintiffs' reliance on *Board of Education of School District No. 150 v. City of Peoria*,

76 Ill. 2d 469 (1979), and *City of Chicago*, 293 Ill. App. 3d 897, for the proposition that article X precludes the Commission's jurisdiction does not persuade us differently. Neither case addresses a home rule unit's powers to regulate employment discrimination concurrently with the state. *City of Peoria* addresses the ability of a city to impose its amusement tax responsibilities upon a school district or park district, and *City of Chicago* addresses the ability of a city to impose its amusement, parking, and telecommunications taxes upon a "state-operated educational institution." See *City of Peoria*, 76 Ill. 2d 469; *City of Chicago*, 293 Ill. App. 3d 897. Moreover, *City of Chicago* considered article X in the context of a state university, that is, a "state-operated educational institution," whereas the case at bar is specific to a local school district and a local school board.[2]

¶ 36    Plaintiffs are not excluded from the Commission's jurisdiction by virtue of article X.

¶ 37        C. The Cook County Human Rights Ordinance and Home Rule Powers

¶ 38    Under the Illinois Human Rights Act, political subdivisions are authorized to:

"create a local department or commission as it or they see fit to promote the purposes of this Act and to secure for all individuals within the jurisdiction of the political subdivision or subdivisions freedom from unlawful discrimination, sexual harassment in employment and sexual harassment in elementary, secondary, and higher education." 775 ILCS 5/7-108(A) (West 2010).

The Cook County Human Rights Ordinance provides:

"INTRODUCTION

Recognizing the need to combat the effects of bias and bigotry throughout Cook County, the Cook County Board of Commissioners adopted the Cook County Human Rights Ordinance on March 16, 1993. The Ordinance is designed to protect all people who live and work in the County from discrimination and sexual harassment in employment, public accommodations, housing, credit transactions, County services and County contracting. The Ordinance prohibits these forms of discrimination when they are based upon a person's race, color, sex, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military discharge status, source of income, gender identity, or housing status.

The protections in the Ordinance are enforced by the Cook County Commission on Human Rights. The Commission is empowered to investigate, conciliate and conduct hearings on complaints of discrimination. In addition, the Commission is authorized to develop and conduct educational programs designed to prevent discrimination before it

---

[2]We further recognize the opinion of the Attorney General in this regard. While this opinion is not binding on us, we find it instructive:

"Because of their status as arms of the State, State colleges and universities are not generally subject to State and local regulations in the way that local school districts are. Local school districts are quasi-municipal corporations which are subject to State and county regulation in the same respect as are units of local government." 1991 Ill. Att'y Gen. Op. No. 91-010, at 4.

-10-

occurs and to promote better relations among the County's diverse racial, ethnic, religious, cultural and social groups." Cook County Ordinance No. 93-O-13, Introduction (1993).

¶ 39 "The home rule provisions of the 1970 Illinois Constitution drastically altered the relationship between our state and local governments, giving municipalities more autonomy to chart the course of their own growth." *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 286-87 (2001) (citing *Kanellos v. County of Cook*, 53 Ill. 2d 161, 166 (1972)). Section 6(a) of the Illinois Constitution provides:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

Section 6(a) allows great flexibility in the exercise of home rule power, conferring " 'the broadest powers possible.' " *Schillerstrom*, 198 Ill. 2d at 287 (quoting *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992)). Nonetheless, the exercise of home rule power can be expressly limited by the General Assembly. See Ill. Const. 1970, art. VII, § 6(h) ("The General Assembly may provide specifically by law for the exclusive exercise by the Sate of any power or function of a home rule unit ***."); see also 5 ILCS 70/7 (West 2010) (no state statute can preempt home rule power unless it contains "specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit").

¶ 40 Where the legislature has not acted to expressly limit the exercise of home rule power, a local ordinance and a state statute may operate concurrently:

"Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i).

Pursuant to section 6(i), home rule units can regulate activities in their communities even where the state has also regulated such activities. *Schillerstrom*, 198 Ill. 2d at 287-88. "Thus, section 6(i) simply eliminates the implied preemption of home rule power ' "by judicial interpretation of unexpressed legislative intention. [Citation.]" ' " *Schillerstrom*, 198 Ill. 2d at 286 (quoting *Scadron*, 153 Ill. 2d at 186).

¶ 41 Our supreme court has devised a three-part inquiry for evaluating the constitutionality of the exercise of home rule power. First, a court must "determine whether the disputed exercise of local government power falls within section 6(a)–that is, whether the local government's activity is a function pertaining to its government and affairs." *Schillerstrom*, 198 Ill. 2d at 289. If it does, then the court must determine whether the General Assembly has preempted the use of home rule powers in that area. *Schillerstrom*, 198 Ill. 2d at 289. If not, then the court must determine the " 'proper relationship' " between the local ordinance and the state statute. *Schillerstrom*, 198 Ill. 2d at 289-90.

¶ 42 The "powers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m). Illinois courts have recognized that home rule units are given broad

powers to legislate. *City of Chicago v. Roman*, 292 Ill. App. 3d 546, 551 (1997).

¶ 43    Here, the local government activity at issue is the Commission's exercise of jurisdiction over plaintiffs. Addressing the first step of the three-part *Schillerstrom* inquiry, we determine here that the Commission's exercise of jurisdiction over plaintiffs pursuant to the Ordinance falls within section 6(a), that is, it pertains to Cook County's government and affairs. See *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶¶ 18-25.

¶ 44    Plaintiffs argue that, as it applies to them, the Ordinance does not pertain to the county's government and affairs because Dr. Mitchell's termination involves a matter of educational administration in which the state and the plaintiffs have the "most vital interest." We disagree. Cook County's interest is directly related to the allegations that plaintiffs violated Dr. Mitchell's human rights as protected under the Ordinance. Matters of human rights violations are within the government and affairs of Cook County as they pertain to the protection of its public health, morals and welfare and, therefore, are a proper matter for Cook County to regulate under its home rule power.

¶ 45    "An ordinance pertains to the government and affairs of a home rule unit where the ordinance relates to problems that are local in nature rather than State or national." *Village of Bolingbrook v. Citizens Utilities Co. of Illinois*, 158 Ill. 2d 133, 138 (1994). "The Illinois Constitution creates broad home rule powers, and home rule units may exercise and perform any function pertaining to their government and affairs, including regulation for the protection of the public health, safety, morals and welfare." *Page v. City of Chicago*, 299 Ill. App. 3d 450, 459 (1998). Issues of employment discrimination relate to the public welfare of a city. See *Page v. City of Chicago*, 299 Ill. App. 3d at 460 (considering an appeal by an employer of a City of Chicago Human Rights' Commission's finding of sexual harassment). Dr. Mitchell's specific claims of employment discrimination, then, fall within the matrix of those issues relating to the public welfare of Cook County.

¶ 46    In addition, the Ordinance prohibits unlawful employment discrimination when: (1) it relates to employment that is in whole or in part in Cook County; or (2) the act of unlawful discrimination takes place in Cook County. Cook County Ordinance No. 02-O-35, § 42-31(a) (amended Nov. 19, 2002). Dr. Mitchell's claims of employment discrimination by plaintiffs relate to the county's government and affairs, as plaintiffs are employers as defined by the Ordinance. Dr. Mitchell's employment and termination took place in Cook County; Bremen Community High School is located within Cook County; its attending students live within Cook County; and all of the alleged acts of employment discrimination occurred within Cook County. It is clear that the prevention of employment discrimination relates to the public welfare of Cook County and affects its local welfare and economy. Therefore, the Ordinance pertains to the County's government and affairs.

¶ 47    Plaintiffs' argument that they were acting "pursuant to explicit authority granted by the legislature and set forth in the School Code" is unavailing. While the Illinois School Code (105 ILCS 5/24-24 *et seq.* (West 2010)) sets forth procedures and safeguards pertaining to plaintiffs, nothing in the School Code permits plaintiffs to terminate their employees in a discriminatory manner.

¶ 48    Next, we consider the second step: whether the General Assembly has preempted the use

-12-

of home rule powers in this area. *Schillerstrom*, 198 Ill. 2d at 289.

¶ 49    Plaintiffs do not argue here that the home rule powers at issue have been preempted. Rather, plaintiffs argue that: (1) "[l]egislative preemption of employment discrimination is not necessary to insulate the plaintiffs from County regulation" because "the concept simply does not apply to public schools" where the "Illinois Constitution's reservation of plenary power in the General Assembly over the pubic school system, preemption is accomplished by the Constitution, not legislative fiat"; and (2) a finding of legislative preemption is not a prerequisite to a determination that a particular exercise of power is beyond a home rule unit's government and affairs.

¶ 50    We have addressed and rejected herein plaintiffs' argument regarding plenary power. Regarding the prerequisite of a finding of preemption, plaintiff relies on *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, to argue that a finding of legislative preemption is not a prerequisite to a determination that a particular exercise of power is beyond a home rule unit's government and affairs. In *StubHub*, our supreme court answered a certified question of " 'whether municipalities may require electronic intermediaries to collect and remit amusement taxes on resold tickets.' " *Id.* ¶ 1. The court's determination that the City of Chicago had overstepped its home rule authority turned on whether the ordinance in question pertained to local government and affairs pursuant to section 6(a). Ultimately, the court held that the city had overstepped its home rule authority because the ordinance in question did not pertain to its own government and affairs:

> "The City's ordinance–specifically the imposition of a joint and several duty on internet auction listing services to collect and remit its amusement tax (Chicago Municipal Code § 4-156-020(A)) and the requirement that internet auction listing services are primarily responsible for collecting and remitting this tax (Chicago Municipal Code § 4-156-030(F))–does not pertain to its own government and affairs. The City has overstepped its home rule authority." *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 36.

¶ 51    Our reading of *StubHub* does not lead us to determine that preemption is not at issue in the case at bar. Rather, the *StubHub* analysis focused on the first step of the three-step *Schillerstrom* analysis. *Schillerstrom*, 198 Ill. 2d at 289 (first, a court must "determine whether the disputed exercise of local government power falls within section 6(a)–that is, whether the local government's activity is a function pertaining to its government and affairs"; if it does, then the court must determine whether the General Assembly has preempted the use of home rule powers in that area; if not, then the court must determine the "proper relationship" between the local ordinance and the state statute). Because our supreme court in *StubHub* concluded that the ordinance in question did not pertain to the city's own government and affairs, it concluded that the city had overstepped its home rule authority. Accordingly, the court ended its analysis there, as there was no reason to continue on to the next step in the *Schillerstrom* analysis.

¶ 52    We, however, have determined herein that the controversy in the case at bar does pertain to the county's government and affairs. Accordingly, it is appropriate for us to move on to the second inquiry, that is, whether the General Assembly has preempted the use of home rule powers in this area. See *Schillerstrom*, 198 Ill. 2d at 289. While the Commission points

out that the Illinois Human Rights Act provides local governments, including the county, with concurrent jurisdiction (775 ILCS 5/7-108(B) (West 2010)), neither party argues that home rule powers in this area have been preempted by the General Assembly. Accordingly, for the purposes of this section 2-615 motion to dismiss, which challenges the legal sufficiency of a complaint based upon defects apparent on its face, we presume there has been no preemption by the General Assembly.

¶ 53    Where the local government's activity is a function pertaining to its government and affairs, and where the General Assembly has not preempted the use of home rule powers in this area, we next consider the " 'proper relationship' " between the local ordinance and the state statute. *Schillerstrom*, 198 Ill. 2d at 289-90. Our consideration is limited to the home rule issue at bar, that is, the county's jurisdiction over plaintiffs. Accordingly, we herein review the relationship between the Illinois Human Rights Act and the Cook County ordinance.

¶ 54    The Illinois Human Rights Act provides local governments, including the county, with concurrent jurisdiction. See 775 ILCS 5/7-108(B) (West 2010). Because the Illinois Human Rights Act has authorized the Commission's jurisdiction over plaintiffs and there is nothing before us indicating that the Commission has acted outside its home rule authority, the Commission properly exercised jurisdiction over plaintiffs.


¶ 55                          D. The Motion for Prohibition

¶ 56    Moreover, because we find that the Commission properly exercised jurisdiction over plaintiffs, we need not consider in detail plaintiffs argument that the trial court erred in denying prohibition. The prerequisites for prohibition are:

> "[A] writ of prohibition may be used to prevent a judge from acting where he has no jurisdiction to act or to prevent a judicial act which is beyond the scope of the judge's legitimate jurisdictional authority. [Citation.] There are four requirements that must be met before a writ of prohibition may be issued: (1) the action to be prohibited must be judicial or quasi-judicial in nature; (2) the jurisdiction of the tribunal against which the writ issues must be inferior to that of the issuing court; (3) the action prohibited must be outside the tribunal's jurisdiction or, if within its jurisdiction, beyond its legitimate authority; and (4) the petitioner must be without any other adequate remedy." (Internal quotation marks omitted.) *People ex rel. Devine v. Stralka*, 226 Ill. 2d 445, 449 (2007).

Plaintiffs fall short in proving prerequisite number three, as we have determined herein that the tribunal was acting within its jurisdiction.


¶ 57                            E. The Motion to Amend

¶ 58    Plaintiffs also initially contended that the trial court erred in denying their motion to amend their complaint. In their reply brief on appeal, however, plaintiffs clarify that, while they continue to believe the trial court erred both in denying their motion to amend and in "rejecting any of the jurisdictional issues they have raised," both parties "appear to be in agreement that all relevant arguments going to the merits of the Commission's jurisdiction

were made and argued below and are ripe for review." Plaintiffs state:

> "The plaintiffs believe both the original and amended Complaints stated valid causes of action; that [the trial court] erroneously dismissed the original Complaint; that to the extent her ruling was based on the form of the pleading, she should have allowed an amended pleading; and that no valid basis existed for her to deny the motion to amend.
>
> Nor do the plaintiffs believe that the Amended Complaint 'added a new basis for challenging the Commission's subject matter jurisdiction' that was not a part of the briefing an argument of the original complaint. As discussed in the plaintiffs' opening brief, the proposed Amended Complaint was based not on any deficiencies they perceived in their original Complaint or argument but on comments made by [the trial court] going to the form of pleading."

Plaintiffs offer that, "[s]ince the outcome of this appeal therefore turns on the merits of the jurisdictional issues and not on whether the amendment was allowed, the trial court's error concerning the Amended Complaint has become secondary." We agree, and because of our disposition regarding the jurisdictional issue herein, find it unnecessary to further address this issue.

¶ 59     We find that the trial court properly dismissed plaintiff's complaint pursuant to section 2-615. From a thorough review of Illinois law and the record on appeal, it is clear that the extraordinary remedy of a writ of *mandamus* was not appropriate in this case.

¶ 60                                          III. CONCLUSION

¶ 61     For all of the aforementioned reasons, the decision of the circuit court of Cook County is affirmed.

¶ 62     Affirmed.

-15-