# Illinois Official Reports

## Appellate Court

---

### *McCann v. Dart*, 2015 IL App (1st) 141291

---

| | |
|---|---|
| Appellate Court Caption | BRIAN McCANN, Plaintiff-Appellant, v. THOMAS J. DART, in His Official Capacity as Cook County Sheriff, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-1291 |
| Filed<br>Rehearing denied | March 27, 2015<br>April 27, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-10583; the Hon. Jean Prendergast Rooney, Judge, presiding. |
| Judgment | Appeal dismissed. |
| Counsel on Appeal | Christine Svenson, of Svenson Law Offices, and Paul J. Orfanedes, of Judicial Watch, Inc., of Washington, D.C., for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Daniel F. Gallagher, Kent S. Ray, and James Beligratis, Assistant State's Attorneys, of counsel), for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justices Gordon and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Brian McCann appeals from the circuit court's grant of defendant Thomas Dart's motion to dismiss plaintiff's petition for *mandamus* and declaratory relief pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)). On appeal, plaintiff contends that: (1) the circuit court erred in dismissing his complaint for lack of standing; and (2) defendant has failed to fulfill a legal duty pursuant to several federal immigration statutes. Because we find that plaintiff's opening brief is deficient and fails to comply with Illinois Supreme Court Rule 341 (eff. Feb. 6, 2013), we exercise our discretion to strike plaintiff's brief and dismiss his appeal.

¶ 2    To fully understand the present appeal, we will first discuss the federal statutes and Cook County ordinance on which plaintiff based his petition for *mandamus* and declaratory relief. The pertinent federal statutes include: 8 U.S.C. §§ 1226, 1226a, and 1357, and the associated regulation 8 C.F.R. § 287.7, which pertain to requests by federal immigration officials from the Immigration and Customs Enforcement Agency (ICE) to local law enforcement officers to detain suspected aliens in their custody; and 8 U.S.C. §§ 1373, and 1644, which pertain to communication and the exchange of information between federal immigration officials and local law enforcement agencies about a person's immigration status. 8 U.S.C. §§ 1226, 1226a, 1357, 1373, 1644 (2012); 8 C.F.R. § 287.7 (2012).

¶ 3    Specifically, 8 U.S.C. §§ 1226 and 1226a detail general guidelines for the arrest, detention, and release of certain aliens. 8 U.S.C. § 1357(d) provides that ICE may issue a detainer upon the request of any law enforcement official if an individual has been arrested for violating controlled substances laws and if the arresting agency has reason to believe that the individual is not lawfully present in the United States. An associated regulation, 8 C.F.R. § 287.7(a), states that the "detainer is a *request* that such agency advise the Department [of Homeland Security], prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." (Emphasis added.) 8 C.F.R. § 287.7(a) (2012). Section (d) of the same regulation further provides:

> "Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department." 8 C.F.R. § 287.7(d) (2012).

¶ 4    In regard to the communications between local law enforcement agencies and the Immigration and Naturalization Service (INS), 8 U.S.C. § 1373(a) states:

> "Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the [INS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a) (2012).

8 U.S.C. § 1373(b) further provides that "no person or agency may prohibit, or in any way restrict" a federal, State, or local government entity from sending to INS, maintaining, or exchanging information regarding the immigration status of any individual. 8 U.S.C. § 1373(b) (2012). Similarly, 8 U.S.C. § 1644 provides that "no State or local government

entity may be prohibited, or in any way restricted, from sending to or receiving from" the INS any information about the immigration status of an alien in the United States. 8 U.S.C. § 1644 (2012).

¶ 5 In September 2011, the Cook County board of commissioners enacted an ordinance in response to these federal statutes, especially with respect to the ICE detainer provisions. Cook County Ordinance No. 11-O-73 (approved Sept. 7, 2011) (hereinafter, the Ordinance). In it, the commissioners expressed concern that "due to troubling inconsistencies in ICE policies, many local law enforcement agencies erroneously believe ICE detainers are mandatory and that local law enforcement agencies are legally required to comply," that the detainers are "routinely imposed on individuals without any criminal convictions or whose cases are dismissed," and that "it costs Cook County approximately $43,000 per day to hold individuals 'believed to be undocumented' pursuant to ICE detainers, and Cook County can no longer afford to expend taxpayer funds to incarcerate individuals who are otherwise entitled to their freedom." *Id*. Ultimately, section 46-37 of the Ordinance, titled "Policy for responding to ICE detainers" provides, in pertinent part:

"(a) The Sheriff of Cook County shall decline ICE detainer requests unless there is a written agreement with the federal government by which all costs incurred by Cook County in complying with the ICE detainer shall be reimbursed.

(b) Unless ICE agents have a criminal warrant, or County officials have a legitimate law enforcement purpose that is not related to the enforcement of immigration laws, ICE agents shall not be given access to individuals or allowed to use County facilities for investigative interviews or other purposes, and County personnel shall not expend their time responding to ICE inquiries or communicating with ICE regarding individuals' incarceration status or release dates while on duty.

(c) There being no legal authority upon which the federal government may compel an expenditure of County resources to comply with an ICE detainer issued pursuant to 8 USC § 1226 or 8 USC § 1357(d), there shall be no expenditure of any County resources or effort by on-duty County personnel for this purpose, except as expressly provided within this Ordinance." Cook County Ordinance No. 11-O-73, § 46-37 (approved Sept. 7, 2011).

¶ 6 In April 2013, plaintiff filed a petition for *mandamus* and declaratory relief against defendant in his official capacity as Cook County sheriff. In his petition, plaintiff alleged that he was a "lifelong resident and citizen" of Chicago, Illinois, located in Cook County, and that, "as a resident and citizen of Cook County, Plaintiff has standing to seek mandamus and declaratory relief to remedy the failure and/or refusal of Cook County public officials to carry out their legal duties."

¶ 7 Under count I for mandamus relief, plaintiff further alleged that: (1) defendant has a legal duty to detain certain aliens in his custody for a period not exceed 48 hours pursuant to 8 U.S.C. §§ 1226, 1226a, and 1357(d) and 8 C.F.R. § 287.7; (2) by refusing to honor ICE detainers, defendant has failed and is failing to carry out his duty; (3) defendant has a legal duty to refrain from prohibiting or in any way restricting communications with federal immigration officials regarding the citizenship or immigration status of persons in defendant's custody; (4) by prohibiting federal immigration officials from having access to prisoners, having access to prisoner records, or using the Cook County sheriff's office (CCSO) facilities for investigative interviews he has failed and is failing to carry out his legal duties pursuant to 8 U.S.C. §§ 1373

- 3 -

and 1644; and (5) defendant's failure to carry out his legal duties is not excused by the Ordinance because the Ordinance is preempted by federal law. Under count II, for declaratory relief, plaintiff claimed that "an actual controversy exists between Plaintiff and Defendant" because defendant was failing to carry out his duties under federal and state law and concluded that an "issuance of judgment declaring the rights of the parties will terminate the controversy." Ultimately, plaintiff requested the court to issue a writ of *mandamus* to compel defendant to carry out "the legal duties described" in the complaint, declare that defendant's failure or refusal to carry out his duties was unlawful, and declare that the Ordinance is preempted by federal law and an *ultra vires* enactment by the Cook County board of commissioners.

¶ 8        In May 2013, defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)). Defendant argued that plaintiff's complaint should be dismissed because: (1) plaintiff failed to state a cause of action upon which relief could be granted pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)) because defendant cannot be legally compelled to administer or enforce the federal regulatory immigration program; and (2) plaintiff lacked standing to bring the complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)) because he suffered no injury in fact to a legally cognizable interest.

¶ 9        In November 2013, the circuit court heard oral argument on defendant's motion and, after the hearing, took the matter under advisement.

¶ 10        In March 2014, the court issued a written order granting defendant's motion pursuant to section 2-619(a)(9) on the grounds that plaintiff lacked standing. The court explained that it had reviewed all the cases cited by the parties and found that *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462 (1988), controlled the issue of standing and required the dismissal of plaintiff's complaint. The court further found that the cases cited by plaintiff were distinguishable from the case before it and "were all decided before *Greer*, and thus are impliedly overruled." Plaintiff now appeals the decision of the circuit court.

¶ 11        In his opening brief on appeal, which consists of a scant eight pages, plaintiff argues:

> "Since at least as early as 1903, a long line of cases has recognized the right of citizens to seek *mandamus* and declaratory relief to remedy the refusal of public officials to carry out their legal duties. *** The sole issue before this Court is whether the 1988 case 'impliedly overruled' this long-standing right."

However, the question before us is not whether there is a general rule regarding standing in *mandamus* actions; rather, the issue is whether plaintiff had standing to seek *mandamus* and declaratory relief in the present case.

¶ 12        Upon review, we find that plaintiff's opening brief fails to conform with Illinois Supreme Court Rule 341(h). Rule 341 governs the form and content of appellate briefs. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. Compliance with these procedural rules is mandatory. *Id*. Furthermore, this court may, in its discretion, strike a brief and dismiss an appeal based on the failure to comply with the applicable rules of appellate procedure. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77.

¶ 13        Plaintiff's opening brief violates several Rule 341(h) requirements. First, Rule 341(h)(5) provides that "[i]n a case involving the construction or validity of a statute, *** ordinance, or regulation," the appellant's brief "shall" include "the pertinent parts of the provision verbatim,

with a citation of the place where it may be found, all under an appropriate heading, such as 'Statutes Involved.' " Ill. S. Ct. R. 341(h)(5). Here, plaintiff's entire complaint for *mandamus* and declaratory relief is based on the federal immigration statutes and the Ordinance detailed above; his claim for relief centers on whether the federal immigration statutes are mandates or requests that defendant accept ICE detainers and leave open the channels of communication between the CCSO and INS. Nonetheless, plaintiff never references or provides a citation to the statutes or Ordinance, and never presents the pertinent parts of the statutes or Ordinance verbatim. In fact, his opening brief does not contain any indication of what statutes or ordinances he may have invoked in the circuit court.

¶ 14 Plaintiff's brief also fails to comply with Rule 341(h)(6), which requires that the appellant include a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6). The "Statement of Facts" section of plaintiff's brief states: "Because the Circuit Court dismissed all claims for lack of standing, the only relevant facts, which were not challenged in the Circuit Court, are that Plaintiff is a citizen of Cook County and that Defendant is a public official." Once again, plaintiff did not reference the pertinent federal immigration statutes under which he is claiming to be entitled to relief, he did not reference the Ordinance, and he did not provide any of the case's procedural background.

¶ 15 In addition, Rule 341(h)(7) requires the appellant to present reasoned argument and citation to legal authority and to specific portions of the record in support of his claim of error. Ill. S. Ct. R. 341(h)(7). This rule is especially important because, when reviewing a case, the appellate court starts with the presumption that the circuit court's ruling was in conformity with the law and the facts. See *Behrstock v. Ace Hose & Rubber Co.*, 147 Ill. App. 3d 76, 86 (1986) (observing that "it is well settled that all reasonable presumptions are in favor of the action of the trial court"); *In re Alexander R.*, 377 Ill. App. 3d 553, 556 (2007) (noting the general and well-established principle of appellate review that the circuit court knows and follows the law). The appellant bears the burden of overcoming that presumption. *Behrstock*, 147 Ill. App. 3d at 86. Moreover, it is well established that appellate courts " 'are entitled to have the issues clearly defined, [and] to be cited pertinent authorities.' " *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 20 (quoting *In re Estate of Kunz*, 7 Ill. App. 3d 760, 763 (1972)).

¶ 16 In his opening brief, plaintiff argues generally that a citizen has the right seek *mandamus* and declaratory relief to remedy the refusal of a public official to carry out his legal duties and that, to demonstrate standing in such a *mandamus* action, a citizen need only allege that he is a citizen and that defendant failed to carry out his legal duties. Plaintiff only cites to the record three times, specifically citing to the circuit court order. He also cites to several Illinois cases in which the plaintiff citizens were found to have standing to seek *mandamus* against a public official, none of which involve the federal immigration statutes under which plaintiff here is seeking relief. See *People ex rel. Gamber v. Board of Supervisors*, 294 Ill. 579 (1920); *People ex rel. Faulkner v. Harris*, 203 Ill. 272 (1903); *Hill v. Butler*, 107 Ill. App. 3d 721 (1982); *People ex rel. Newdelman v. Swank*, 131 Ill. App. 2d 73 (1970). Plaintiff concludes that he "plainly alleged that he is a lifelong citizen and that Defendant failed to carry out his legal duties" and that, therefore, he "indisputably alleged sufficient facts to satisfy the standing requirement." However, the right of a citizen to bring a *mandamus* action against a public

official does not exist in a vacuum. "*Mandamus* is an extraordinary remedy traditionally used to compel a public official to perform a purely ministerial duty." *Bremen Community High School District No. 228 v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112177, ¶ 14 (citing *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 192-93 (2009)). A court will only grant *mandamus* if the plaintiff has established: (1) a clear, affirmative right to relief; (2) a clear duty of the public officer to act; and (3) clear authority in the public officer to comply. *Bremen*, 2012 IL App (1st) 112177, ¶ 14. Here, plaintiff failed to establish any of the requirements for a grant of this extraordinary remedy in his opening brief. He does not once reference the federal immigration statutes and he does not cite any authority suggesting that the unnamed statutes require defendant to follow the directives within.

¶ 17      In his opening brief, plaintiff concedes that a decision on standing "may differ depending on the issue involved and the nature of the relief sought. [Citations.] Whether the plaintiff has standing to sue is to be determined from the allegations contained in the complaint." *Martini v. Netsch*, 272 Ill. App. 3d 693, 695 (1995). Despite this acknowledgment, plaintiff does not cite the complaint in his opening brief and only refers to his allegations that he is a citizen and that defendant is a public official. These minimal references to what amount to the first two paragraphs of a 37-paragraph complaint are insufficient to comply with the rule.

¶ 18      Furthermore, in Illinois, standing does require "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). Here, plaintiff does not name his injury or a legally cognizable interest; he does not name the specific injury that plaintiff, as a citizen, suffered and he does not refer to the specific legal duty he is alleging the defendant failed to fulfill. Plaintiff never cites to his complaint for *mandamus* and he does not analyze why he has standing for the extraordinary relief he is requesting. The subject of plaintiff's actual argument is completely and conspicuously missing from his opening brief. The appellate court is "not a depository in which the burden of argument and research may be dumped." *Holzrichter*, 2013 IL App (1st) 110287, ¶ 80.

¶ 19      Additionally, plaintiff's reply brief highlights his complete failure to provide any reasoned argument about the facts of the present case in his opening brief. For the first time in his reply brief, plaintiff references the federal immigration statutes under which he argues he is entitled to relief. In a footnote, plaintiff explains that "[d]ue to an intervening change of circumstances, Plaintiff has elected not to pursue his claim regarding ICE detainers." Then, again for the first time in his reply brief, plaintiff argues that defendant has a legal duty to refrain from prohibiting or restricting communications or the exchange of information with federal immigration officials about a person's citizenship or immigration status pursuant to 8 U.S.C. §§ 1373 and 1644. However, Rule 341(h)(7) provides that "[p]oints not argued [in the opening brief] are waived and *shall not be raised in the reply brief*." (Emphasis added.) Ill. S. Ct. R. 341(h)(7). Plaintiff did not argue the merits of his underlying claim in his opening brief and has, therefore, waived consideration of the merits on appeal.

¶ 20      For the reasons outlined above, we find that plaintiff's opening brief is completely deficient and fails to comply with Rule 341. Although we seldom enter an order dismissing an appeal for failure to comply with supreme court rules, our sound discretion permits us to do so. *Holzrichter*, 2013 IL App (1st) 110287, ¶ 77. Therefore, in our discretion, we strike plaintiff's brief and dismiss the appeal.

¶ 21      Appeal dismissed.