2016 IL App (4th) 150699

NO. 4-15-0699

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE DECATUR PARK DISTRICT, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Macon County |
| CITY OF DECATUR and DECATUR HUMAN | ) | No. 13CH216 |
| RELATIONS COMMISSION, | ) | |
| Defendants-Appellees | ) | |
| (Rukiya Bates-Elem, Intervenor). | ) | Honorable |
| | ) | Thomas E. Little, |
| | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Turner concurred in the judgment and
opinion.

**OPINION**

¶ 1        On July 30, 2015, the trial court entered a written order dismissing plaintiff

Decatur Park District's (District) verified petition for a writ of prohibition against the City of

Decatur (City) and the Decatur Human Relations Commission (Commission), finding the

Commission has jurisdiction to proceed with its claim of unlawful retaliation against the District

pursuant to chapter 28 of Decatur's City Code (City Code) (Decatur City Code, ch. 28, §§ 1-1 to

11-2).  The District appeals, arguing the court erred in dismissing its petition and in declining to

rule on the District's claim it was entitled to immunity pursuant to the Local Governmental and

Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 to 10-

101 (West 2012)).  We affirm.

¶ 2                                I. BACKGROUND

¶ 3    On September 3, 2013, the District filed a verified petition for a writ of prohibition against the City and the Commission, requesting the trial court to enter a writ ordering the City and the Commission to permanently dismiss with prejudice a matter before the Commission (case No. 12-0918), which alleged the District engaged in unlawful retaliation against Rukiya Bates-Elem, who worked for the District. The District also sought to permanently enjoin the Commission from taking any other action in the case.

¶ 4    According to the District, the City and the Commission lack jurisdiction to regulate the District's employment matters or interfere with its ability to make decisions, which the Commission would necessarily do if it adjudicates the underlying retaliation claim. Further, the District alleged the Commission "completely ignored the uncontested legal arguments and authorities asserted by the District" in denying the District's motion to dismiss, specifically the Tort Immunity Act.

¶ 5    In the underlying case, Bates-Elem alleged she was discriminated against based on retaliation. According to her charge, the District retaliated against her because she filed a racial discrimination charge against the District on August 24, 2012. Bates-Elem alleged she was terminated by Kevin Brewer, a supervisor at the District, on August 8, 2012. On the day Brewer terminated her, Bates-Elem alleged misconduct on Brewer's part to Kristi Orrick, the District's human resources manager, and Ryan Raleigh, the District's risk manager. Bates-Elem told Orrick and Raleigh she had recorded conversations she had with Brewer, which proved his misconduct. Orrick told Bates-Elem the recordings were illegal and asked Bates-Elem to forward copies of the recordings to her. Bates-Elem forwarded copies the same day.

¶ 6    Bates-Elem filed racial discrimination charges with the Commission against the District on August 24, 2012. The District received the charges on August 28, 2012. On

September 10, 2012, Clifford Kretsinger, the District's police chief, initiated a criminal offense report, alleging Bates-Elem committed the offense of eavesdropping against her supervisor at the District. The District informed the Macon County sheriff's office of the eavesdropping allegation on September 13, 2012, on the advice of the State's Attorney's office. Bates-Elem claimed this was done because she filed discrimination charges against the District.

¶ 7 On September 13, 2012, Bates-Elem was arrested for eavesdropping. Bates-Elem noted the District did not file an offense report concerning the eavesdropping until after it was served with her discrimination charge. According to Bates-Elem, a causal relationship existed between her arrest for eavesdropping, which was initiated by the District, and the fact she filed a racial discrimination charge against the District.

¶ 8 On November 21, 2012, a human rights officer informed the District's counsel sufficient probable cause existed to believe the District retaliated against Bates-Elem. According to the human rights officer, "The close proximity of time between [the District's] receipt of Complainant's *Charge #120815* and Respondent pressing the criminal charge against Complainant establishes probable cause that a causal relationship exists between the two events." (Emphasis added.) In responding to the District's argument Bates-Elem's supervisor alone, and not the District, was responsible for pressing charges, the human rights officer stated:

"(i) Macon County States Attorney-Elect Jay Scott
informed me on October 25, 2012, that he had not filed the
eavesdropping charges against Complainant because [the
District's] Executive Director, William Clevenger, had told Mr.
Scott that Respondent just wanted 'to see this whole thing go
away,' and that Respondent 'would not push for prosecution' if

- 3 -

Complainant would 'drop her charge of unlawful discrimination' against Respondent. Mr. Scott said he subsequently discussed that arrangement with Complainant and it was his understanding that Complainant intended to withdraw her human rights claim against Respondent.

> ii. By interjecting [itself] into the above discussion, [the District] has taken an active role in pursuing or discontinuing pursuit of the criminal charges against Complainant."

On January 15, 2013, the Commission filed the underlying complaint against the District.

¶ 9 On February 19, 2013, the District filed a motion to dismiss the Commission's complaint. The District argued the City and the Commission did not have jurisdiction to regulate the District's employment matters. Further, the City's human rights ordinance could not be applied to the District because doing so would frustrate the District's statutorily granted authority to manage its own affairs. The District also argued it is absolutely immune from the retaliation claim pursuant to the doctrine of discretionary immunity, codified in the Tort Immunity Act (745 ILCS 10/1-101 to 10-101 (West 2012)). In addition, the District argued both it and its employees had an absolute right to report Bates-Elem's offense as a matter of public policy and, as a result, cannot be held liable for "retaliation." The District also argued Bates-Elem failed to allege sufficient facts to support her retaliation claim. Further, the District stated affirmative evidence supports the fact Bates-Elem cannot possibly state a cause of action for retaliation. Finally, the District argued it was entitled to judgment as a matter of law on the claimed damages because Bates-Elem is not entitled to back pay as she had been terminated prior to the alleged retaliation and the Commission has no jurisdiction over Bates-Elem's rate of pay.

¶ 10　　　　　　On June 3, 2013, the Commission denied the District's motion to dismiss.

¶ 11　　　　　　On September 3, 2013, the District filed a verified petition for a writ of prohibition in the trial court. On September 12, 2013, the City and the Commission filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)), arguing the Commission had jurisdiction to hear charges of unlawful discrimination in employment against the District.

¶ 12　　　　　　On July 30, 2015, the trial court entered an order granting defendants' motion to dismiss. The court found section 7-108 of the Human Rights Act (775 ILCS 5/7-108 (West 2012)) provides the City with concurrent jurisdiction with the State on discrimination matters. The court found nothing in the record established the City acted outside its home rule authority in passing the human rights ordinance at issue or in creating the Commission. As a result, the court found the Commission had jurisdiction. As for the District's immunity argument, the court found this issue premature. According to the court:

> "As set forth in Defendant's [*sic*] Rebuttal argument, if Plaintiff's
> position is correct, then it directly follows that every time the
> Commission makes an erroneous pre-hearing ruling the losing
> party could seek redress in the Circuit Court under the theory that
> the Commission exceeded its' [*sic*] authority. If the Commission
> erred regarding the [Tort Immunity Act] issue, then that error can
> be brought to the attention of this court at the conclusion of the
> Commission hearing via a common law writ of certiorari. This
> court will then have the benefit of a complete record and may rule
> accordingly."

¶ 13       This appeal followed.

¶ 14                                      II. ANALYSIS

¶ 15       The District argues the trial court erred in dismissing its petition for writ of
prohibition.  As this appeal presents a question of law, we apply a *de novo* standard of review.
*Williams v. Board of Review*, 241 Ill. 2d 352, 360, 948 N.E.2d 561, 566-67 (2011).  " 'A writ of
prohibition is an extraordinary judicial process whereby a superior court may prevent inferior
tribunals or persons from exercising a jurisdiction with which they have not been vested by law.' "
*Board of Governors of State Colleges & Universities for Chicago State University v. Illinois Fair
Employment Practices Comm'n*, 78 Ill. 2d 143, 149-50, 399 N.E.2d 590, 593 (1979) (quoting
*People ex rel. Town Court v. Harrington*, 21 Ill. 2d 224, 226, 171 N.E.2d 647, 648 (1961)).  Citing
*Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 468, 537 N.E.2d 784, 791 (1989),
the District states:

>           "Writs of prohibition must be issued when each of the following
>           elements have been met:  first, the action sought to be prohibited
>           must be judicial or quasi-judicial in nature; second, the jurisdiction
>           of the tribunal against whom the writ is sought must be inferior to
>           that of the issuing court; third, the action sought to be prohibited
>           must be either outside the jurisdiction of the inferior tribunal or, if
>           within its jurisdiction, beyond its legitimate authority; and fourth,
>           the party seeking the writ must be without any other adequate
>           remedy."

The District argues it met all the requirements for a writ of prohibition.

¶ 16    The City and the Commission do not contend the District's claim fails to meet the first two elements above.  As a result, we focus on whether the Commission had jurisdiction to enforce the human rights ordinance against the District.  Section 7-108 of the Illinois Human Rights Act (775 ILCS 5/7-108(A) (West 2012)) states, in part:

> "Authority.  A political subdivision, or two or more political subdivisions acting jointly, may create a local department or commission as it or they see fit to promote the purposes of this Act and to secure for all individuals within the jurisdiction of the political subdivision or subdivisions freedom from unlawful discrimination, sexual harassment in employment and sexual harassment in elementary, secondary, and higher education.  The provisions of any ordinance enacted by any municipality or county which prohibits broader or different categories of discrimination than are prohibited by this Act are not invalidated or affected by this Act."

The District does not dispute the City has the home rule authority to create its own ordinances regarding unlawful discrimination.

¶ 17    Section 2-1 of chapter 28 of the City Code states:  "It shall be unlawful, and shall constitute a human rights violation, for any person to discriminate against another person because of his or her race, color, religion, national origin, age, sex, sexual orientation, marital status, disability or unfavorable discharge from military service."  Decatur City Code, ch. 28, § 2-1.  Section 2-3 of the City Code (Decatur City Code, ch. 28, § 2-3) states:

"It is also a human rights violation for a person, or for two or more persons to conspire to:

> A.  Retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment, discrimination based on citizenship status in employment, or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Chapter[.]"

The claim against the District in this case alleges the District retaliated against Bates-Elem for filing her first complaint against the District alleging racial discrimination.

¶ 18       The District does not dispute it falls within the definition of an "employer" pursuant to the City Code.  Instead, the District argues allowing the Commission to proceed with the complaint would interfere with its authority pursuant to the Park District Code to manage its own affairs.  According to the District:

> "The alleged retaliatory actions that serve as the basis for Bates-Elem's retaliation complaint directly involve the [District's] handling of a felony crime Bates-Elem committed, while she was a [District] employee, against another [District] employee, on [District] property, during working hours."

However, this is an oversimplification of the issue in this case. What happened is not the primary issue; why it happened is the important question before the Commission. The Commission has alleged the District's actions were retaliation for Bates-Elem filing a racial discrimination claim against the District. The purpose of the Commission's action was not to interfere with the District's authority.

¶ 19 According to the District, "Illinois courts have long recognized the exclusive jurisdiction of park districts to manage their own affairs and have correspondingly refused to apply municipal ordinances to park districts in a wide variety of circumstances." Continuing this theme, the District argues "numerous Illinois courts have recognized that courts 'will not give effect to an ordinance of one unit of local government which frustrates and contravenes the statutory authority granted to another.' "

¶ 20 The legislature provided park districts with authority to employ individuals, establish a board of commissioners, acquire real estate, levy and collect taxes, and pass ordinances, rules, and regulations (70 ILCS 1205/1-1 to 13-9e (West 2012)). However, the legislature did not provide park districts with authority to discriminate or retaliate against their employees for filing a complaint alleging discrimination. The cases relied on by the District are distinguishable from the situation here because the ordinances in question in those cases interfered with statutorily granted authority.

¶ 21 For example, in *Board of Trustees of the Police Pension Fund v. Illinois Human Rights Comm'n*, 141 Ill. App. 3d 447, 490 N.E.2d 232 (1986), a police officer filed a discrimination charge with the Illinois Human Rights Commission (IHRC) after the pension fund board denied his application to participate in the pension fund after finding him unfit to serve as a police officer because of a medical condition. The pension fund board filed a petition for a

writ of prohibition in the trial court to stop the IHRC from pursuing the claim. The trial court denied the board's request. On appeal, this court reversed, stating:

> "We believe that the Illinois Pension Code implicitly vests the board with jurisdiction over the subject matter of certain alleged civil rights violations. Since the board is vested with exclusive authority to determine eligibility to participate in the fund, and the primary reason for denying an application to participate in the fund is medical problems, the board is necessarily required to consider an applicant's medical condition in determining whether a person is eligible to participate in the fund."
>
> *Id.* at 453, 490 N.E.2d at 235.

In other words, the board's role was to consider medical problems of individuals in deciding claims—something that could be viewed as "discrimination" due to health conditions. However, in the case *sub judice*, the District provides no authority for the proposition discrimination or retaliation in employment matters is a role of park districts.

¶ 22 The District also relies on a case in which it was involved. See *Decatur Park District v. Becker*, 368 Ill. 442, 14 N.E.2d 490 (1938). However, *Becker* involved an ordinance which interfered with the District's statutory authority to condemn property zoned as residential for park purposes. *Id.* at 447, 14 N.E.2d at 493. In that case, our supreme court stated:

> "It is next insisted that the zoning ordinance of the city of Decatur prohibits petitioner from taking these tracts for park purposes, because they were zoned as 'A' residence property, and public parks could not be located there. No authority is cited to

support this contention, and on principle it cannot be sustained. If appellants' contention is correct, it would be necessary for the appellee to locate its city parks and playgrounds in commercial and industrial zones exclusively. The appellee is given authority to locate parks, and the city is given authority to adopt a zoning ordinance. [Ill. Rev. Stat. 1937, ch. 24, ¶¶ 66 to 70.] The Legislature did not empower cities to exclude parks from residence districts. The two statutes should be construed so that the ordinance of the park district and the zoning ordinance of the city will be given effect in their respective fields of operation. Regardless of the fact that this property was zoned as 'A' residence property, the park district could condemn and use it for park purposes." *Id.*

Applying this reasoning to the instant case, considering the legislature did not provide park districts with the authority to discriminate in employment matters but did provide for local governments to police discrimination, the Commission was not interfering with the District's statutory authority by bringing this discrimination claim against the District.

¶ 23        The District also argues the Commission lacked jurisdiction to award the relief sought in the complaint. According to the District, "The Commission lacks jurisdiction to award Bates-Elem lost wages/back pay, because Bates-Elem alleges that the retaliation occurred after August 8, 2012, *i.e.*[,] after the [District] had already lawfully terminated her employment." The District stated the Commission had already found a lack of probable cause Bates-Elem was discriminated against when discharged from the District. The District also argues the

Commission has no authority to force the District to hire, reinstate, or upgrade Bates-Elem. However, the Commission's complaint in case No. 12-0918 requested other relief, including an order the District cease and desist from any further human rights violations, compensatory damages, consequential damages, pain and suffering, and reasonable attorney fees. Even assuming the Commission has no authority to award lost wages/back pay, this does not result in the Commission losing jurisdiction in this case. As a result, it would be premature for this court to rule on the type of damages the Commission could award.

¶ 24 The District also argues section 7-108 of the Illinois Human Rights Act (775 ILCS 5/7-108 (West 2012)) does not provide the City or Commission with jurisdiction to adjudicate a retaliation claim against the District. We disagree with the District. Section 7-108(A) states:

> "A political subdivision, or two or more political subdivisions acting jointly, may create a local department or commission as it or they see fit *to promote the purposes* of this Act and to secure for all individuals within the jurisdiction of the political subdivision or subdivisions freedom from unlawful discrimination, sexual harassment in employment and sexual harassment in elementary, secondary, and higher education. *The provisions of any ordinance enacted by any municipality or county which prohibits broader or different categories of discrimination than are prohibited by this Act are not invalidated or affected by this Act.*" (Emphases added.)
> 775 ILCS 5/7-108(A) (West 2012).

Based on this language, the City had authority to prohibit an employer from retaliating against an employee for filing a claim of racial discrimination. Prohibiting retaliation clearly promotes the purposes of the Human Rights Act.

¶ 25        The District also argues:

> "Section 7-108(A) provides that '[a] political subdivision, or two or
> more political subdivisions acting jointly, may create a local
> department or commission as *it or they* see fit to promote the
> purposes of this Act … .' (Emphasis added.) 775 ILCS 5/7-
> 108(A). This language implies that one political subdivision is not
> subject to another political subdivision, and that the City would
> need to 'act jointly' with the [District], a co-equal unit of
> government, in order to apply the Ordinance to the [District]."
> (Emphasis in original.)

The District provides no authority supporting this argument, and we disagree.

¶ 26        This argument, once again, essentially goes to the power of the Commission over the District. As the First District noted in *Bremen Community High School District No. 228 v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112177, ¶ 39, 981 N.E.2d 369, the 1970 state constitution altered the relationship between the state and local governments. Pursuant to the home rule provisions of the new constitution, municipalities were given broad power to plan their own growth, although the constitution does allow the General Assembly to expressly limit home rule power. *Id.* (citing Ill. Const. 1970, art. VII, § 6(a), (h)).

¶ 27        In *Bremen*, as in this case, the school district argued the county's human rights commission was trying to interfere with the explicit authority provided to the school district by

- 13 -

the General Assembly. *Id.* ¶ 47. However, the First District held the School Code did not permit school districts to terminate their employees in a discriminatory manner. *Id.* As we stated earlier, the same is true of the Park District Code.

¶ 28    The District also argues it "is protected by the immunities conferred by the Tort Immunity Act." The District cites sections 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2012)) as codifying the discretionary immunity doctrine. According to the District, in the motion to dismiss it provided the Commission, the District established it was absolutely immune pursuant to the Tort Immunity Act because the alleged retaliatory actions would constitute discretionary policy determinations. However, this argument goes to the merits of the retaliation claim, not the Commission's jurisdiction.

¶ 29    In its order dismissing the District's petition for a writ of prohibition, the trial court stated it believed any ruling it made with regard to the Tort Immunity Act would be premature. We agree. As stated earlier, the Commission had jurisdiction over the District. Assuming for the sake of argument the Commission did err in denying the District's motion to dismiss, this error would not deprive the Commission of its jurisdiction. In dismissing the District's petition, the trial court stated:

"If the Commission erred regarding the [Tort Immunity Act] issue, then that error can be brought to the attention of this court at the conclusion of the Commission hearing via a common law writ of certiorari. This court will then have the benefit of a complete record and may rule accordingly."

¶ 30    We agree with the trial court this issue is premature at this time. The Tort Immunity Act does not affect the Commission's jurisdiction in this case. The Tort Immunity Act

- 14 -

is an affirmative defense that must be raised and pleaded, or else it is forfeited. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387, 712 N.E.2d 298, 302 (1998). However, a court's lack of subject matter jurisdiction is not subject to waiver and cannot be cured by consent. *McCormick v. Robertson*, 2014 IL App (4th) 140208, ¶ 17, 15 N.E.3d 968. If the District does not prevail before the Commission, it may appeal the Commission's decision at that time.

¶ 31 Because the Commission was not acting beyond its jurisdiction in bringing this claim against the District, we need not examine the fourth element necessary to acquire a writ of prohibition. We note this decision should not be seen as any indication of this court's thoughts on the merits of Bates-Elem's underlying retaliation claim against the District.

¶ 32                                    III. CONCLUSION

¶ 33 For the reasons stated, we affirm the trial court's dismissal of the District's petition for a writ of prohibition.

¶ 34 Affirmed.