NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210539-U

NO. 4-21-0539

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JAYLIN BONES, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | McLean County |
| THE CITY OF BLOOMINGTON, | ) | No. 19L53 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Paul G. Lawrence, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court reversed and remanded, finding defendant was not entitled to judgment as a matter of law.

¶ 2    In May 2019, plaintiff, Jaylin Bones, filed a complaint against defendant, the City of Bloomington, seeking damages for injuries he suffered when he was struck by a vehicle fleeing from Bloomington, Illinois, police officers. In April 2021, defendant filed a motion for summary judgment. Following an August 2021 hearing, the circuit court granted defendant's motion. Plaintiff appeals, arguing the court's decision was in error. We agree, and we reverse and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4        On September 29, 2017, at approximately 10:30 p.m., Bloomington police officer Caleb Zimmerman observed a black Toyota Camry (Camry) traveling westbound on Washington Street in Bloomington, Illinois, and began following it. Zimmerman conducted a search on the Camry's license plate through the Law Enforcement Agencies Data System, which indicated the vehicle had been reported stolen. Zimmerman followed the Camry, without activating his emergency lights, until it parked next to a curb on Jefferson Street. Zimmerman parked his squad car several feet behind the Camry and exited his vehicle. As he approached, one of the Camry's passengers fled on foot, and Zimmerman told the remaining occupants to step back to the vehicle and not leave. Zimmerman then walked to the rear of the Camry to confirm the license plate's registration number. At that point, the driver started the Camry's engine and began to drive away without illuminating the vehicle's headlights or taillights. Zimmerman ran toward the driver's door and attempted to open it but was unable to stop the vehicle as it drove off.

¶ 5        Bloomington police officer Michael Parsley, who was responding to Zimmerman's request for assistance, joined the chase and pursued the Camry. The Camry led Parsley through multiple residential neighborhoods at high rates of speed, at times upwards of 60 miles per hour, disregarding traffic controls. At approximately 10:33 p.m., Parsley observed the Camry swerve, and after speeding through an intersection, it struck plaintiff, who was bicycling across the street. The collision caused plaintiff to sustain multiple hand fractures, a broken leg, and a dislocated shoulder, as well as several abrasions, lacerations, and bruises about his body. The Camry was later found abandoned near 912 North Roosevelt Avenue with significant damage to the front of the vehicle, including its windshield.

¶ 6        In May 2019, plaintiff filed a complaint against defendant, seeking damages in excess of $50,000 for the injuries he sustained after being struck by the Camry fleeing from

Zimmerman and Parsley. Plaintiff alleged the police officers' conduct was willful and wanton and defendant was liable for its employees' actions under the doctrine of *respondeat superior*. Defendant timely answered plaintiff's complaint in June 2019, denying the material allegations of willful and wanton conduct and arguing it was "entitled to immunity pursuant to one or more sections of the [Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2018))]."

¶ 7         In April 2021, defendant filed a motion for summary judgment and a supporting memorandum of law asserting, "[p]laintiff's claims are barred by the immunity provided in Section 4-106 of the Tort Immunity Act [(745 ILCS 10/4-106(b) (West 2020))]."

¶ 8         Following an August 2021 hearing, the circuit court granted defendant's motion for summary judgment. Citing *Townsend v. Anderson*, 2019 IL App (1st) 180771, 161 N.E.3d 211, the court stated the following:

> "In *Townsend* there were police officers on both side[s] of the car,
> but here we had an officer behind the car which prevented the car
> from going backwards. In *Townsend*[,] no officer said that the
> driver was not allowed to leave the scene like we have here, and as
> mentioned before the officer did try to stop the driver just like in
> *Townsend*.
>
>         And so *** the Court believes that if there's a sufficient
> showing of physical limitation in *Townsend* then there certainly
> was a showing here as well."

Ultimately, the court found the driver was an escaping prisoner within the context of the Tort Immunity Act (745 ILCS 10/4-101 (West 2020)) and therefore, defendant was immune from liability for plaintiff's injuries pursuant to section 4-106(b) of the Tort Immunity Act.

¶ 9        This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11        On appeal, plaintiff argues the circuit court erroneously granted defendant's motion for summary judgment. Plaintiff asserts, at the time he was struck, the driver of the Camry was not an escaped or escaping prisoner and, therefore, defendant is not immune from liability pursuant to section 4-106(b) of the Tort Immunity Act (745 ILCS 10/4-106(b) (West 2020)). Plaintiff contends Zimmerman "did nothing to exert any actual control over the driver [of the Camry]," and thus, he was not held in custody because there was no limitation on his freedom of movement before he drove away from the curb.

¶ 12        Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt." (Internal quotation marks omitted.) *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22, 131 N.E.3d 488. A circuit court's ruling on a motion for summary judgment presents a question of law, and thus, we apply the *de novo* standard of review. *Mayfield Cooper Brotze v. City of Carlinville*, 2021 IL App (4th) 200369, ¶ 27, 183 N.E.3d 251.

¶ 13        Section 4-106(b) of the Tort Immunity Act states the following, in pertinent part: "Neither a local public entity nor a public employee is liable for *** [a]ny injury inflicted by an

escaped or escaping prisoner." 745 ILCS 10/4-106(b) (West 2020). The Tort Immunity Act further provides, "[a]s used in this Article, 'prisoner' means a person held in custody." 745 ILCS 10/4-101 (West 2020).

¶ 14        In support of its argument, defendant clings to *Townsend* for the principle that, within the meaning of the Tort Immunity Act, "[t]o show custody, it is only necessary to show that a reasonable person in the same situation would have not felt free to leave." Defendant contends the Camry driver's freedom of movement was controlled by Zimmerman's show of authority when he "pointed the occupants *** back to the car and ordered [the driver] *** to remain at the scene while he positioned himself behind their car and radioed in the car[']s registration to confirm the stolen vehicle hit."

¶ 15        In *Townsend*, two Chicago police officers stopped a vehicle containing four occupants, two in the front seats and two in the rear. *Townsend*, 2019 IL App (1st) 180771, ¶ 3. The officers approached the vehicle on opposite sides, ordered the driver and front seat passenger to exit the vehicle, and placed them in handcuffs. *Townsend*, 2019 IL App (1st) 180771, ¶ 3. While one officer handcuffed the front seat passenger, one of the rear seat passengers, Ricky Anderson, "slipped into the *** driver's seat," and he put the vehicle in gear as the other officer attempted to grab him. *Townsend*, 2019 IL App (1st) 180771, ¶¶ 3, 6. Anderson eluded the officer's attempt to restrain him and drove off. *Townsend*, 2019 IL App (1st) 180771, ¶ 6. The two officers did not give chase. *Townsend*, 2019 IL App (1st) 180771, ¶ 6. Rather, they remained at the scene with the handcuffed driver and front seat passenger, and one officer "relayed what had occurred over his radio, providing details about the fleeing car and the direction in which it was heading." *Townsend*, 2019 IL App (1st) 180771, ¶ 6. Anderson and the other occupant in the fleeing vehicle were apprehended approximately five minutes later after

- 5 -

striking another vehicle in which the plaintiff was a passenger. *Townsend*, 2019 IL App (1st) 180771, ¶ 7. The plaintiff sued the City of Chicago, the police officers involved in the initial traffic stop, and the police officers who took the driver of the fleeing vehicle into custody. *Townsend*, 2019 IL App (1st) 180771, ¶ 1. The defendants subsequently filed a motion for summary judgment, arguing they were immune from liability pursuant to section 4-106(b) of the Tort Immunity Act, which the circuit court later granted. *Townsend*, 2019 IL App (1st) 180771, ¶ 1.

¶ 16        On appeal, the First District affirmed the circuit court's judgment, holding the plaintiff's injuries were caused by an escaping prisoner within the context of section 4-106(b) of the Tort Immunity Act. *Townsend*, 2019 IL App (1st) 180771, ¶ 34. In doing so, the appellate court found the positioning of the officers on both sides of the stopped vehicle "effectively curtailed *** [the passengers'] freedom of movement," and the vehicle's passengers "would not have reasonably felt free to leave the scene of that stop." *Townsend*, 2019 IL App (1st) 180771, ¶¶ 31, 32.

¶ 17        However, our supreme court recently "disagree[d] with the appellate court's decision in *Townsend*," and found "section 4-106(b) immunity applies only when the circumstances of the case show officers have directly controlled and limited a person's freedom of movement to a particular place." *Robinson v. Village of Sauk Village*, 2022 IL 127236, ¶ 33. In so holding, the supreme court noted the officers "never directly controlled or limited Anderson's freedom of movement during the traffic stop." *Robinson*, 2022 IL 127236, ¶ 34. "The officers were close to Anderson, and they attempted to restrain him, but they did not hold him in custody within the meaning of section 4-106(b) before he drove away and collided with another car, injuring the plaintiff." *Robinson*, 2022 IL 127236, ¶ 35.

¶ 18        In *Robinson*, three Village of Crete, Illinois, police officers pursued a reportedly stolen black Buick into Indiana, where it eventually stopped in a churchyard. *Robinson*, 2022 IL 127236, ¶¶ 4-5. The first officer to catch up with the fleeing vehicle positioned his patrol car perpendicular to the driver's side of the Buick, exited his vehicle with his handgun drawn, and ordered the driver to show his hands. *Robinson*, 2022 IL 127236, ¶ 5. When the other two officers arrived, they positioned their squad cars adjacent to and behind the first officer's car, exited their vehicles, and drew their service weapons. *Robinson*, 2022 IL 127236, ¶ 5. The driver of the Buick "remained seated in the vehicle with the engine running and the door closed." *Robinson*, 2022 IL 127236, ¶ 7. He also ignored the officers' commands to exit the vehicle. *Robinson*, 2022 IL 127236, ¶ 7. Approximately one minute after arriving at the parking lot of the church, the driver put the Buick in gear and drove away with the three officers in pursuit. *Robinson*, 2022 IL 127236, ¶ 8. Meanwhile, two Sauk Village, Illinois, police officers "monitored the chase, blocked off intersections, and joined the chase at times." *Robinson*, 2022 IL 127236, ¶ 8. The Buick and pursuing officers reentered Illinois, and the chase eventually proceeded through a residential neighborhood. *Robinson*, 2022 IL 127236, ¶ 8. As the driver of the fleeing vehicle sped through an intersection, he struck the plaintiff, a pedestrian in the crosswalk. *Robinson*, 2022 IL 127236, ¶ 9. The driver of the Buick "continued to flee and returned to Indiana, where he was shot and killed by Indiana police officers." *Robinson*, 2022 IL 127236, ¶ 9. The plaintiff filed suit against Sauk Village, the Village of Crete, and the police officers involved in the pursuit of the Buick. *Robinson*, 2022 IL 127236, ¶ 1. The Village defendants subsequently filed a motion for summary judgment, arguing they were immune from liability pursuant to section 4-106(b) of the Tort Immunity Act, which the circuit court granted. *Robinson*, 2022 IL 127236, ¶ 1. The appellate court reversed, finding the driver was not " 'an

escaped or escaping prisoner' " as required for absolute immunity under section 4-106(b). *Robinson*, 2022 IL 127236, ¶ 11.

¶ 19    Our supreme court agreed with the appellate court that "a mere show of authority is not sufficient to establish that a person is 'held in custody' under the Tort Immunity Act." *Robinson*, 2022 IL 127236, ¶ 37. The supreme court found "the plain language of the Tort Immunity Act requires a showing that police officers directly limited or controlled a person's freedom of movement to a particular place to trigger the absolute immunity provided in section 4-106(b)." *Robinson*, 2022 IL 127236, ¶ 38. In doing so, the supreme court reexamined its rationale in *Ries v. City of Chicago*, 242 Ill. 2d 205, 950 N.E.2d 631 (2011), and concluded the Tort Immunity Act "supports the emphasis in *Ries* on direct control and limitation of a suspect's freedom of movement in determining whether the suspect is an 'escaped or escaping prisoner.' " *Robinson*, 2022 IL 127236, ¶ 25. The supreme court explained, "[t]he word 'prisoner' plainly refers to a person subject to some level of physical confinement," and "the phrase 'held in custody' plainly requires some direct restriction or control of a person's freedom of movement to a particular place for at least a limited period of time." *Robinson*, 2022 IL 127236, ¶¶ 25, 26. Despite the officers' attempts to control the driver's freedom of movement, the supreme court found "a mere show of authority" was not functionally or legally equivalent to one who is " 'held in custody.' " *Robinson*, 2022 IL 127236, ¶ 37. To find otherwise under the Tort Immunity Act "would expand the absolute immunity provided by section 4-106(b) beyond its intended application." *Robinson*, 2022 IL 127236, ¶ 37. As a result, the supreme court concluded the driver of the Buick "was not 'held in custody' in the church parking lot within the plain and ordinary meaning of that phrase, and consequently, he was not an 'escaped or escaping prisoner'

- 8 -

when he subsequently hit [the] plaintiff as he was crossing the street." *Robinson*, 2022 IL 127236, ¶ 39.

¶ 20    Here, like *Robinson*, while a reasonable person in the Camry driver's position at the time he was confronted by Zimmerman may not have felt free to leave, his freedom of movement had not been directly controlled or limited in any significant manner. After parking the Camry on the side of the street, the driver exited the vehicle and reentered it after Zimmerman instructed him to step back. Zimmerman, who had parked his squad car several feet behind the Camry, did not activate his overhead emergency lights or attempt to restrain any of the Camry's occupants. Despite walking to the rear of the Camry to confirm the license plate's registration number, Zimmerman never took up a position which prevented the driver from exiting again on either side of the vehicle. He gave no commands to the driver, did not advise him he was under arrest, and had not positioned his squad car in a manner that would block the Camry's exit. There was nothing to prevent the driver of the Camry from driving away—and he did so—leading the officers on a chase. Although Zimmerman ran toward the driver's door and attempted to open it, he never directly controlled or limited the Camry driver's freedom of movement before he drove away and collided with plaintiff. See *Robinson*, 2022 IL 127236, ¶¶ 28, 34. As a result, the evidence in this record does not justify a conclusion the driver of the Camry was "held in custody" within the meaning of section 4-106(b) of the Tort Immunity Act, and consequently, he was not an "escaped or escaping prisoner" when he subsequently hit plaintiff as he crossed the street. *Robinson*, 2022 IL 127236, ¶ 39. Thus, considering *Robinson*, defendant is not entitled section 4-106(b) immunity as a matter of law, and we find the circuit court erred in granting defendant's summary judgment motion on that basis. See *Mayfield Cooper Brotze*, 2021 IL App (4th) 200369, ¶ 27.

¶ 21 Alternatively, defendant argues plaintiff's claims are barred pursuant to sections 2-109, 2-202, and 4-102 of the Tort Immunity Act (745 ILCS 10/2-109, 2-202, 4-102 (West 2020)). However, we decline to address defendant's alternative arguments because defendant failed to raise, brief, or even argue these matters in the circuit court. "The Tort Immunity Act is an affirmative defense that must be raised and pleaded, or else it is forfeited." *Decatur Park District v. City of Decatur*, 2016 IL App (4th) 150699, ¶ 30, 57 N.E.3d 631 (citing *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387, 712 N.E.2d 298, 302 (1998)); see also *Reyes v. Board of Education of the City of Chicago*, 2019 IL App (1st) 180593, ¶ 48, 139 N.E.3d 123 ("[I]mmunity under the [Tort Immunity] Act must be raised and pled as an affirmative defense or it is forfeited, even if the evidence supports the existence or appropriateness of the defense."); *Dobias v. Oak Park & River Forest High School District 200*, 2016 IL App (1st) 152205, ¶ 118 n.2, 57 N.E.3d 551 (declining to address whether an action was barred pursuant to a section of the Tort Immunity Act because the issue had not been fully developed in the record); *In re Marriage of Solomon*, 2015 IL App (1st) 133048, ¶ 22, 29 N.E.3d 560 ("[T]he Tort Immunity Act provides an affirmative defense, which may be waived if not raised."); *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, ¶ 59, 19 N.E.3d 75 ("[I]ssues not raised in the trial court are waived and may not be considered for the first time on appeal.").

¶ 22                                III. CONCLUSION

¶ 23 For the foregoing reasons, we reverse the summary judgment entered in favor of defendant, and we remand the cause to the circuit court for further proceedings.

¶ 24 Reversed and remanded.