2024 IL App (1st) 230954-U

THIRD DIVISION
May 8, 2024

No. 1-23-0954

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| JAMES J. GELDERMANN, | ) | Cook County |
| | ) | |
|    Petitioner-Appellant, | ) | |
| | ) | No. 20 D 7522 |
| and | ) | |
| | ) | |
| VERA ILVOVSKY, | ) | Honorable William S. Boyd |
| | ) | and James A. Shapiro, |
|    Respondent-Appellee. | ) | Judges Presiding. |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming orders of the circuit court of Cook County in a marital dissolution case where the appellant has failed to provide a sufficient record on appeal.

¶ 2    Shortly before their marriage, James Geldermann (James) and Vera Ilvovsky (Vera) signed a premarital agreement. Six years later, they executed a postnuptial agreement which provided, in part, that the premarital agreement was revoked. James subsequently filed a petition for dissolution of marriage in the circuit court of Cook County. In this *pro se* appeal, he challenges multiple circuit court orders which determined the validity and enforceability of the parties' agreements and otherwise addressed financial matters. As discussed below, we affirm.

¶ 3                           BACKGROUND

¶ 4      James and Vera married in March 2010; each was married before and had adult children. Prior to the marriage, Vera purchased a condominium in Northbrook, Illinois, where she and James resided (the Northbrook residence).  At the time he married Vera, James had continuing financial obligations to his first wife, Nancy Zick.

¶ 5                          *The Agreements*

¶ 6      On the day before their wedding, James and Vera signed a "Premarital Agreement." According to the agreement, James was represented by counsel, and Vera represented herself. The agreement included minimal financial disclosures; each party represented that they were "unconcerned" regarding the precise nature and extent of the other's assets and income. James and Vera generally agreed to keep their property separate and to waive the right to maintenance or contribution to attorney fees if they legally separated or divorced.

¶ 7      On January 31, 2016, the parties executed a "Postnuptial Agreement" which stated that they "hereby revoke, rescind, and abrogate the *** Premarital Agreement, and replace it with the instant Postnuptial Agreement."  In accordance with the postnuptial agreement, the net proceeds of any sale of James's ownership interests in two companies – a 9% interest in "Midwest[ern] Farms" and a 5% interest in "Pacific Protein" – would become marital property.  The agreement acknowledged that James received a salary as the president of "Wireless.Dev Corporation" (Wireless.Dev) and that his children owned the company through a trust.  Vera waived all claims as to Wireless.Dev and agreed to maintain the confidentiality of documents relating to the company.  The agreement also provided, in part, that if James initiated a legal separation or divorce, he was required to pay maintenance to Vera in the amount of not less than $2000 per month for 10 years – an obligation which would survive his death.

¶ 8    Although the documents are not included in the record on appeal (as discussed further below), the record suggests that James signed a will in August 2016, wherein he memorialized a $240,000 obligation to Vera, presumably representing $2000 per month for 10 years. He apparently executed a subsequent will in October 2017 removing her as a beneficiary, without her knowledge.

¶ 9    In a rider to the postnuptial agreement executed on October 26, 2017, the parties stated that James would pay $195,000 to Vera for her interest in the Northbrook residence and would repay her mortgage amount through refinancing. The parties agreed that, upon completion of the sale, the Northbrook residence would become James's separate nonmarital property.

¶ 10    The record indicates that James paid Vera for her interest in the Northbrook residence. Vera moved to Florida in late 2017 or early 2018, and James remained in Illinois.

¶ 11                                *Dissolution Proceedings*

¶ 12    On October 20, 2020, James filed a petition for dissolution of marriage in the circuit court of Cook County. A copy of the premarital agreement was appended to the petition. James requested that the premarital agreement "become[ ] incorporated" into the judgment for dissolution of marriage and that Vera "be forever barred" from asserting a claim for maintenance against him.

¶ 13    In her answer to the petition, Vera denied that the premarital agreement was effective. She also filed a counterpetition for dissolution of marriage, wherein she alleged that the postnuptial agreement had replaced the premarital agreement and she requested spousal maintenance. In his response to Vera's counterpetition, James stated that the postnuptial agreement was unenforceable and "should be rendered null and void."

¶ 14    James subsequently filed a verified petition for a declaratory judgment that the premarital

agreement was valid and enforceable. In her answer, affirmative defenses, and counterclaims, Vera sought a declaratory judgment invalidating the premarital agreement – based on the parties' express revocation thereof in the postnuptial agreement[1] – and finding the postnuptial agreement to be valid and enforceable.

¶ 15 Following arguments of counsel, Judge William S. Boyd entered a written order on June 14, 2021, finding that the premarital agreement was revoked by the parties in writing and was therefore not valid and enforceable.

¶ 16 James subsequently filed a verified petition for partial summary judgment regarding the postnuptial agreement. He advanced multiple arguments regarding the validity and effect of the postnuptial agreement, including that: (a) the financial requirements of the agreement – except those relating to maintenance – had been fully satisfied; (b) the agreement was "totally one-sided in favor of Vera" and was not a valid contract; (c) enforcement of the agreement would "reduce him to abject poverty" and force him to liquidate his nonmarital property; and (d) he signed the agreement without the benefit of counsel and while "under extreme duress." Vera responded, in part, that summary judgment was improper given that there were genuine issues of material fact, *e.g.*, whether James was under duress when he signed the postnuptial agreement.

¶ 17 Vera also filed a notice of intent to claim dissipation of marital assets. She alleged that James had dissipated marital assets by funding trusts for his grandchildren, purchasing a luxury vehicle, and withdrawing significant amounts from various business and personal accounts. James responded, in part, that certain withdrawals were for his reasonable living expenses.

¶ 18 The matter was set for trial before Judge James A. Shapiro in August 2022. Prior to trial,

---

[1] Vera alternatively maintained that the premarital agreement should be invalidated as James had not provided reasonable disclosures regarding his finances.

the parties filed agreed joint trial stipulations whereby various documents were received into evidence, including the judgment of dissolution of James' prior marriage; tax returns for multiple years; the premarital agreement, postnuptial agreement, and rider; certain court filings; mortgage documentation; financial affidavits; and brokerage, bank account, and credit card statements.

¶ 19                                 *The Parties' Testimony*

¶ 20    After hearing counsels' arguments, the circuit court denied the summary judgment motion and reserved ruling on the declaratory judgment matters, finding there were "too many factual issues."  The bench trial commenced, and the testimony included the following.

¶ 21    James testified that, during their marriage, Vera had withdrawn approximately $90,000 from one of her pension accounts to pay for household expenses.  The postnuptial agreement characterized this as a "loan" from Vera to James, which was secured by his approximate 5% ownership interest in Pacific Protein Corporation.  James represented that he received minimal income from Pacific Protein, and he estimated the value of his ownership interest as between $50,000 and $100,000.  He testified that he had repaid the "loan" in full.

¶ 22    Although his income in prior years was modest, James testified that his adjusted gross income in 2020 exceeded $400,000, mostly representing his share of the liquidation of Midwestern Farms, a limited partnership which had been established by his parents.

¶ 23    During cross examination, James testified that he is the sole proprietor of "Wireless Research & Trading," which he characterized, in part, as an "investment vehicle."  He also confirmed that he is a 50% shareholder in RedJim, LLC, another business entity which makes investments.  James was questioned regarding his role as acting president of Wireless.Dev – a software development company – and his role as the director of technology for another business entity, "BizDoc Storage."  When Vera's counsel inquired whether James had previously

disclosed his involvement in BizDoc Storage during "almost two years of litigation and a ton of discovery," James confirmed that he had not.

¶ 24    Vera testified that she received the premarital agreement three or four days before the wedding and that James had stated he would not marry her unless the agreement was executed. After a few years of marriage, Vera first learned about James's ownership interest in Midwestern Farms. Vera testified that she and James "came to the idea that we need *** to get an agreement where I will be more familiar with his financial resources before the marriage." According to Vera, James was involved in the three-month drafting process as to the postnuptial agreement.

¶ 25                                *The Rulings*

¶ 26    The circuit court entered a judgment for dissolution of marriage and settlement of marital property rights on February 1, 2023 (dissolution order). In the dissolution order, the circuit court found "no cause to disturb" Judge Boyd's ruling on June 14, 2021, regarding the invalidity of the premarital agreement. The circuit court then discussed – and rejected – James's defenses to the validity and enforcement of the postnuptial agreement, *i.e.*, duress, unconscionability, and lack of consideration. Among other things, the circuit court found certain testimony from James to be lacking in credibility and observed that James admittedly failed to disclose the full extent of his financial interests and employment activities pursuant to Vera's discovery requests. The circuit court also found that Vera's waiver of any interest in Wireless.Dev constituted consideration for the postnuptial agreement.

¶ 27    The circuit court acknowledged "an element of unfairness" in the postnuptial agreement – *e.g.*, the 10-year duration of maintenance is more than double what Vera would generally be entitled to under Illinois law – but found that the maintenance provision did "not quite rise to the level of unconscionability." The circuit court observed that James had "eschewed the assistance"

of the attorney who had both drafted the premarital agreement and handled his dissolution proceedings. After finding the postnuptial agreement to be valid and enforceable, the circuit court addressed the marital property distributions, including the following.

¶ 28    As to the approximate $400,000 proceeds from the liquidation of Midwestern Farms, the circuit court found that an equitable division was 80% to James and 20% to Vera; approximately $80,000 was thus awarded to Vera. The circuit court also awarded maintenance to Vera in the amount of $2000 per month – the minimum amount as provided in the postnuptial agreement – for a period of 10 years. As to attorney fees, the circuit court noted that the postnuptial agreement provided that, if a party incurred legal fees due to a challenge or breach of the postnuptial agreement by the other party, the circuit court "shall award" reasonable attorney fees and suit expenses to the non-defaulting party. Given that James had contested the validity of the postnuptial agreement throughout the dissolution proceedings, the circuit court awarded reasonable attorney fees to Vera. After effectuating other distributions in accordance with the postnuptial agreement, the circuit court found that James did not dissipate any marital assets.

¶ 29    James filed a motion to reconsider and to vacate and modify the dissolution order. He sought an order (a) finding the postnuptial agreement was invalid and unenforceable; and (b) vacating the obligation to pay Vera the monthly maintenance, the lump sum payment, and her attorney fees. James also filed a motion to stay enforcement of the dissolution order.

¶ 30    In an order entered on May 2, 2023, the circuit court amended the dissolution order to adjust the lump sum amount owed to Vera relating to the Midwestern Farms liquidation from approximately $80,000 to approximately $67,000, based on certain capital gains taxes paid by James. The circuit court otherwise denied the reconsideration motion and the stay motion. In accordance with Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), the order included a

finding of no just reason to delay enforcement or appeal of the order. James timely appealed.

¶ 31                                    ANALYSIS

¶ 32    James advances multiple claims of error in his *pro se* appellant's brief. He primarily challenges the circuit court's rulings with respect to the validity of the premarital agreement and the scope and enforceability of the postnuptial agreement. Among other things, James asserts that the financial documents and income tax returns admitted at trial demonstrated that it would be "impossible" to satisfy the terms of the postnuptial agreement. He further claims that the circuit court disregarded the circumstances surrounding the execution of the postnuptial agreement, including Vera's threats "to make his life miserable" if he consulted his own attorney or if he rejected the terms of the agreement. James also challenges the circuit court's findings regarding the payments to Vera for monthly maintenance and her attorney fees, as well as the award of a percentage of the net proceeds of the sale of Midwestern Farms.

¶ 33                                *Preliminary Issues*

¶ 34    As a preliminary matter, we observe that Vera did not file a brief in this appeal. We will nevertheless address the merits of the appeal under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Pursuant to *Talandis*, in the absence of an appellee's brief, a reviewing court should address an appeal on the merits where the record is simple and where the claimed errors are such that the court may easily decide the issues raised by the appellant. *In re Marriage of Earlywine*, 2013 IL 114779, ¶ 13.

¶ 35    We note, however, that the deficiencies of James's brief hinder our review of his claims. His brief violates Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), which governs the form and content of appellate briefs. Among other things, the brief lacks a table of contents, a concise statement of the applicable standard(s) of review, or an appendix (Ill. S. Ct. R. 341(h)(1), (3), (9)

(eff. Oct. 1, 2020)).

¶ 36 Pursuant to Rule 341(h)(6), an appellant is to provide the reviewing court with the facts necessary to an understanding of the case. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). The facts must be stated fairly and accurately without comment or argument. *Id.; Ammar v. Schiller, DuCanto & Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 12. While we acknowledge that James's brief includes an "Introduction" section which contains a basic recitation of the facts of this case, this discussion is argumentative in parts and fails to include citations to the appellate record, as is required by Rule 341(h)(6). *Ammar*, 2017 IL App (1st) 162931, ¶ 12.

¶ 37 Under Rule 341(h)(7), an appellant's brief must set forth his contentions, which he is required to support with argument, citations to the appellate record, and citations to authority. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). "This rule is especially important because, when reviewing a case, the appellate court starts with the presumption that the circuit court's ruling was in conformity with the law and the facts." *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 15. In this case, the brief fails to cite the record and includes few references to applicable law.

¶ 38 "The purpose of the rules is to require parties before a reviewing court to present clear and orderly arguments so that the court can properly ascertain and dispose of the issues involved." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. James's *pro se* status does not excuse his noncompliance with the rules. See *Ammar*, 2017 IL App (1st) 162931, ¶ 16 (noting a *pro se* party is held to the same standard as a licensed attorney). Although we have discretion to strike a brief and to dismiss an appeal for failure to comply with the applicable rules (*McCann*, 2015 IL App (1st) 141291, ¶ 12), we decline to strike James's brief, as we understand the core contentions presented therein. Even if we choose to reach the merits of his arguments, however, the deficiencies of the record on appeal preclude our effective review.

¶ 39                              *Claims of Error on Appeal*

¶ 40     As noted above, James raises multiple challenges to the dissolution order entered following the trial. "The standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence." *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 859 (2008). Accord *In re Marriage of Kendra*, 351 Ill. App. 3d 826, 829 (2004). A judgment is against the manifest weight of the evidence only when the findings appear to be arbitrary, unreasonable, or not based on the evidence, or when an opposite conclusion is apparent. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 23.

¶ 41     James, as the appellant, has the burden to present a sufficiently complete record of the proceedings to support his claims of error and, in the absence of such a record, it will be presumed that the circuit court's orders had a sufficient factual basis and were in conformity with law. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). James has failed to satisfy his burden. The record on appeal does not include the financial affidavits submitted by the parties throughout the dissolution proceedings or most of the exhibits which were referenced throughout the trial. Without such documents, we are unable to assess whether the circuit court's rulings were arbitrary, unreasonable, or not based on the evidence. See *Vaughn*, 2016 IL 119181, ¶ 23. See also *Lah v. Chicago Title Land Trust Co.*, 379 Ill. App. 3d 933, 938-39 (2008) (noting that a deed and trial exhibits cited in the appellant's brief were not included in the appellate record and thus the reviewing court would presume the circuit court's ruling to be correct under *Foutch*); *In re K.S.*, 317 Ill. App. 3d 830, 832-33 (2000) (holding that, in the absence of the exhibits and other reports presented during the hearings, the reviewing court would presume the circuit court's decision to terminate the wardship of minors was proper).

¶ 42     For example, James argues on appeal that "[t]he evidence and testimony presented at trial

show that throughout the time that James and Vera were married that James did not have the financial means to fulfill the terms of the postnuptial agreement." Based on our review of the transcripts, the evidence presented at trial included individual and joint tax returns and various bank and brokerage statements spanning a period of multiple years. Without reviewing such documentation, we cannot definitively determine whether the court's findings were in error.

¶ 43 James also maintains that he signed the postnuptial agreement under duress. The trial testimony suggested, however, that James subsequently prepared and executed a will which memorialized some of the financial obligations set forth in the postnuptial agreement – a fact which may undercut (or possibly bolster) his claims of duress. Nevertheless, as the appellate record fails to include a copy of the will, its import cannot be fully assessed. Similarly, James challenges the division of the proceeds of the Midwestern Farms liquidation, arguing that most of the proceeds had been spent prior to the dissolution proceedings. In the absence of the relevant bank statements and other financial records, we cannot adequately evaluate this challenge.

¶ 44 Even if we were to overlook the deficiencies of the appellate record, we do not find the circuit court's rulings to be erroneous. For example, the circuit court rejected various defenses asserted by James, *i.e.*, that he signed the postnuptial agreement under duress and that the agreement was unconscionable as the payments contemplated therein would reduce him to "the verge of abject poverty and homelessness." Such rejection was based, in part, on the court's negative assessment of James's credibility. As noted by the trial court in the dissolution order, "James admitted that he did not disclose the full extent of his financial interests and employment activities pursuant to Vera's discovery requests." The trial judge, as the trier of fact, was in the best position to judge the credibility of James and Vera and the weight to be given to their

11

testimony. See *Chicago's Pizza*, 384 Ill. App. 3d at 859. We further observe that James's trial testimony – which revealed his relatively sophisticated business and financial endeavors and his relatively comfortable lifestyle – does not support his contention that he would be rendered destitute by his agreed-upon post-dissolution payments to Vera. *E.g.*, *In re Marriage of Tabassum*, 377 Ill. App. 3d 761, 778 (2007) (noting that "by not providing credible evidence of his own economic circumstances, respondent could not establish the parties' relative economic circumstances or that the postmarital agreement was substantively unconscionable").

¶ 45    We also reject James's challenges to (i) Judge Boyd's order (before trial) regarding the invalidity and unenforceability of the premarital agreement based on its written revocation or (ii) Judge Shapiro's order (after trial) addressing the motion for reconsideration. The record on appeal does not include a transcript or other report of proceedings pursuant to Illinois Supreme Court Rule 323 (eff. July 1, 2017) for any pretrial or posttrial hearing. Without a transcript or acceptable substitute, we are unable to determine what arguments were made by counsel, whether any evidence was presented, and on what basis the circuit court ruled. To the extent that James argues on appeal that the trial court failed to account for capital gains taxes when dividing the Midwestern Farms proceeds, we note that the order regarding the motion for reconsideration expressly amended the dissolution order to address this issue.

¶ 46    In conclusion, due to the deficiencies of the record, we are unable to fully assess James's claims of error. As our supreme court has long recognized, "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392. Furthermore, based on the record as presented, we do not find the circuit court's rulings to be against the manifest weight of the evidence, for the reasons discussed above.

¶ 47                                CONCLUSION

¶ 48    The judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 49    Affirmed.